MAULDIN v. THE CITY COUNCIL OF GREENVILLE.

1. "POLICE POWER" defined.
2. RES JUDICATA.—Is Mauldin *v.* City Council of Greenville, 42 S. C., 293, *res judicata* as to the issues raised in this case.
3. CITIES AND TOWNS—TAXES—STREETS—CONSTITUTION.—A statute authorizing a city council to tax the lot owners abutting on one street between certain limits for two-thirds of the cost of the improvements in grading, paving, &c., the sidewalks is unconstitutional.
4. CASE OVERRULED.—Mauldin *v.* City Council of Greenville, 42 S. C., 293, overruled.

Before WATTS, J., Greenville, September, 1898. Affirmed.

Action by W. L. Mauldin, for himself and other property owners in like plight, *v.* the City Council of Greenville, for injunction. From judgment for plaintiff, defendant appeals.

*Messrs. Jos. A. McCullough* and *J. P. Carey*, for appellant, cite: *Power of legislature to pass the act:* 3 S. C., 369;

4 S. C., 20; 102 U. S., 703. *Constitution does not limit the legislature here:* 15 S. C., 593; 4 S. C., 402; 27 S. C., 396; 6 S. C., 1; 21 S. C., 318; 7 S. E. R., 609. *Construction of constitutional taxing provisions:* 147 U. S., 198; 7 So. Rep., 388; 51 Cal., 12; 19 Fla., 140; 70 Ga., 817; 11 S. E. R., 802; 26 Ind., 119; 31 Ia., 271; 32 Ia., 271; 22 S. W., 752; 14 S. W., 957; 5 So. Rep., 848; 12 Allen, 223; 48 Md., 265; 2 Mich., 560; 19 Mich., 39; 47 Miss., 367; 25 Mo., 505; 4 N. Y., 519; 14 S. E. R., 521; 44 N. W., 1072; 125 U. S., 345; 111 U. S., 701; 14 Wall., 676; 96 U. S., 97; 102 U. S., 691; 37 N. E., 69; 19 S. E., 552; 30 Pac. R., 1041; 24 A., 817; 12 So., 458; 37 Atl., 158; 59 N. W., 304; 24 S. E. R., 738; 167 U. S., 548. *Comments on Mauldin* v. *City Council:* 42 S. C., 293; 16 S. C., 32; 23 S. C., 66; 1 McC., 360, 345; 5 Rich. L., 550; 3 Brev., 217; 12 Rich., 733; 4 McC., 544; 96 U. S., 97; 11 Mich., 129; 128 U. S., 578; 60 Am. Dec., 363; 14 S. E. R., 521; 11 S. E. R., 802; 4 N. Y., 418; 145 Ill., 563; 12 Wis., 563; 13 N. J. L., 196; 37 N. J. L., 416; 31 Gratt., 571; 6 Col., 106; 1 Tex. Civ. App., 56; 4 R. I., 445; 53 Pa., 280; 19 Ohio, 418; 36 N. Y., 446; 8 Met., 180; 94 Ill., 604; 57 Miss., 378; 15 L. R. A., 624; 1 Swan., 177; 19 S. E. R., 553; 52 S. C., 181. *The new Constitution authorizes the passage of the act:* Con. 1895, art. 9, sec. 9; art. 8, sec. 3; 5 S. & M., 385; 28 Cal., 345; 5 Ohio, 243; 10 Wis., 258; 51 Ala., 42; 8 Heisk, 456; 34 N. E., 677.

*Messrs. Haynesworth, Parker & Patterson,* contra, cite: *The former statutory and constitutional provisions:* 7 Stat., 12; 9 Stat., 698; Con. 1778, art. IX., sec. 2; 12 Rich. L., 702. *Present provisions:* 20 Stat., 1372; Con. 1895, art. I., sec. 5, sec. 6; art. III., sec. 29; art. X., sec. 1, sec. 13, sec. 5; art. VIII., sec. 6, sec. 3. *Decisions under Constitution of 1778:* 3 Brev., 217; 1 McC., 360; 12 Rich., 702; 37 N. J. L., 415; 34 Ill., 203; 32 Ark., 31. *Decisions under Constitutions of 1868 aud 1895:* Con. 1895, art. I., sec. 6; art. X., sec. 1, sec. 5, sec. 13; art. VIII., sec. 6; 4 S. C., 422.

*Act of 1891 unconstitutional exercise of taxing power:* 9 Heisk, 349; Con. 1868, art. IX., sec. 8; art. X., sec. 5; 31 S. C., 1.

Sept. 29, 1898.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   This action was begun in the Court of Common Pleas for Greenville County, on the first day of September, 1896, to obtain a perpetual injunction restraining the defendant, the city council of Greenville, from levying and collecting an assessment of two-thirds of the cost for laying a sidewalk on each side of Main street, from Reedy River to North street, from those owners of real estate which abutted on said Main street, within the limits above stated, on the ground that the act of the legislature of this State, approved in the year 1891 (see 20 Stat. at Large, 1372), was unconstitutional on the several grounds set up in the complaint.   The answer denied that the act in question was unconstitutional; or that there was any failure on the part of the city council that rendered the assessment null and void; or that the plaintiff could controvert the constitutionality of the act in question by reason of the fact that as to him the judgment of this Court, as found in the case of *Mauldin* v. *City Council of Greenville,* 42 S. C., 293 (affirming its constitutionality), was *res judicata.*

The cause came on to be heard before his Honor, Judge Watts, upon exceptions to the report of Master Verner, and by Judge Watts' decree it was held that the defendant should be enjoined and restrained from levying the assessments against the plaintiff and other property owners on Main street for two-thirds of the costs of improvements to the sidewalks and drains.

From this decree the defendant now appeals on eighteen exceptions.   There have been two hearings had in this Court.   On the first, when the argument was finished in this Court, an order was passed directing a reargument, with leave to counsel to question "the correctness of the former decision in this case, as reported in 42 S. C., 293, so

far as it holds.that the city council has power to assess the property of any taxpayer to pay the 'costs of the improvements * * * to the sidewalks and drains fronting their respective lands.' "

The appellant relies upon the police power to sustain the constitutionality of the assessments made by the city council of Greenville against the plaintiffs for the cost of the sidewalks and drains recently improved by the city council of Greenville, and paid for by the said city council out of the general funds of the municipality. Quite recently, in the two cases of the *Cornelia Real Estate Company, etc.,* v. *City Council of Charleston et al.,* and *Diedrich Stehmeyer* v. *City Council of Charleston et al., ante,* page 259, this Court has, with great patience, endeavored to show that the police power, where the public health, the public morals, and the public safety are concerned, operates directly upon the persons and property of the citizen, so as to require that such person or property shall not prove injurious to other citizens, and then, also, such police power is made to operate upon persons and property when the citizen is not at fault, but to further a public purpose; and when, to accomplish the furtherance of a public purpose, the person or property is taken from the citizen or citizens by taxation or the right of eminent domain, that in such cases the right to tax or the right of eminent domain must be exerted in accordance with the provisions of the Constitution, adopted in the year 1895, which are therein ordained to regulate taxation or the right of eminent domain. The grounds for these conclusions of this Court on the police power need not be reproduced here, inasmuch, as before remarked, this Court has so recently embodied its conclusions on this subject in the two cases just quoted.

But independently of the exercise of the police power, the appellant, the city council of Greenville, seeks on two other grounds to sustain the assessment of these lot owners for the cost of improvement of the sidewalks

and drains in front of their property, respectively; *first*, it is insisted that this question is *res judicata* as to W. L. Mauldin; and, *second*, that such an assessment is perfectly consistent with the provisions of our present Constitution. Let us examine these positions in their order. Is the decision of the case of *W. L. Mauldin* v. *City Council of Greenville*, 42 S. C., 293, controlling as *res judicata* of the question now presented by the case at bar? We uphold the doctrine of *res judicata* as it is presented in *Hart* v. *Bates*, 17 S. C., 35, namely: "The doctrine of *res judicata* is very far-reaching and effective. It is founded on principles of the wisest policy, because the peace and order of society require that a matter that is once litigated should not again be drawn in question between the same parties or those claiming through them. But while it is important to maintain the principle in all its integrity, it is not less important that it should be clearly defined and kept within its proper limits. All agree as to its utility and necessity, but there has been a difference of opinion as to its precise limits and its application in particular cases. As we understand it, the rule established in the *Duchess of Kingston's Case*, is, '*first*, that the judgment of a court of competent jurisdiction, directly on the point, is, as a plea in bar or as evidence, conclusive between the same parties upon the same matter directly in question in another court; *secondly*, that the judgment of a court of exclusive jurisdiction directly upon the point is in like manner conclusive upon the same matter between the same parties coming incidentally in question in another court for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which comes collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment.' 2 Smith's Land Cases, 424, and notes. It seems, therefore, to make out the defense, at least three things are necessary: the parties must be the same or their privies; the subject-matter must be the same;

19—58

and the precise point must have been ruled." We may remark at the beginning, that the present action was commenced by W. L. Mauldin for himself and such others in like plight with himself, who would elect to come into this suit, and that by a consent order passed in the case at bar, Theron Earle, James McPherson, W. C. Gibson, and others did come in under such invitation. Each of these parties hold their property separately from each other, and are not privies of W. L. Mauldin. So, therefore, it would seem that even if W. L. Mauldin was bound by the former judgment, under the doctrine of *res judicata*, his coplaintiffs are not so bound. But is W. L. Mauldin precluded from this suit by the former adjudication? In the former suit, W. L. Mauldin sought to enjoin the city council of Greenville from levying an assessment upon his property on Main street to pay for the cost of an improvement to the street (Main) running in front of his property, but in praying for an injunction against the assessment upon his property because of the improvement to the street, he also prayed that ·the city of Greenville should be restrained from levying an assessment on his property to improve the sidewalk and the drain in front of his property. So, therefore, the judgment of this Court, composed as it was then of the present Chief Justice and Mr. Justice Pope (for Mr. Justice Gary did not sit in that case), was in these words: "It is, therefore, the judgment of this Court, that so much of the judgment of the Circuit Court as grants a perpetual injunction against the defendants, preventing any assessment upon the property of the plaintiff and other citizens of the city of Greenville in like plight as the plaintiff, to pay for the cost of improving the roadway of Main street in said city, be affirmed; but where the said judgment enjoins the defendants from levying and assessing upon the plaintiff and others in like plight with him the cost of the improvements to the sidewalks and drains fronting their respective lands, it be reversed." The plaintiff seeks to show that although such was the judgment of this Court in the previous case, yet that judg-

ment referred to the status of the parties in the year 1893, and that since that time, to wit: in the year 1896, the city council of Greenville has caused its engineer to relocate both the sidewalk and drain, claiming to act under the act of the legislature passed in the year 1891, and also by virtue of sundry resolutions passed by the said city council of Greenville, whereby they required the taxpayers in question to pay of the cost of such improvements and drains so that each of such taxpayers would pay one-third of the cost of sidewalks and drains in front of his property, and also one-third of the cost of such improvements of the sidewalk and drain on the opposite side of the street, thus making each taxpayer who owns land on Main street pay two-thirds of one-half of the aggregate cost of such sidewalks and drains on both sides of such street so improved.

It is thus hoped by the taxpayers in question that the doctrine of *res judicata* may be avoided. This matter thus presented is not free from difficulty, but we much prefer not to be misled by any apparent avoidance of the former decision, so far as sidewalks and drains are concerned. The two Justices who rendered the former decision confessed with candor that so much of their judgment as related to sidewalks and drains was reluctantly made because of some previous decisions rendered while the Constitution of 1790 was of force, and not because in their opinion such previous decisions were bottomed upon correct principles of law. The two Justices in question felt a reluctance to overrule such decisions; but now, when the Court is full, we propose to go to the root of the matter, and if it becomes necessary to destroy the former decision, as found in 42 S. C., 293, so far as sidewalks and drains are concerned, to do so. It must be borne in mind that the Constitutions of 1787 and 1790 contained no restriction upon the power of the General Assembly in the matter of taxation than that which ordained: "No freeman of this State shall be taken or imprisoned, or exiled or disseized of his freehold, liberties, or privileges, or outlawed or exiled,

or in any manner destroyed of life, liberty, or property, but by the judgment of his peers or by the law of the land * * * ." So that, whenever the General Assembly itself, or any municipal corporation created by it, and clothed by it with power, should desire and ordain the payment of a tax by the citizens, it was only necessary that the provisions of section 2 of art. 9 of the Constitution of 1790 (which we have partly quoted), should not be violated. Under previous legislation which had been continued of force, the citizens of the city of Charleston were required to pay for sidewalks and drains fronting their premises—therefore, under these wholesome provisions and "by the law of the land," these improvements in the city of Charleston as to sidewalks and drains were held by the Courts to be constitutional. But, by the Constitutions of the years 1868 and 1895, very radical changes were made in the subject of taxation. It was no longer left to the General Assembly or its municipalities to tax as they pleased. All taxes were required to be levied according to the value of the property real and personal. All persons and property were required to be taxed uniformly. Whenever any property was exempted from taxation, it was specifically named in the Constitution itself. The assessments of the value of property for taxation were required to be made in anticipation of the laying of taxes. Great care was taken in providing that taxes, as laid by the State, should be for public purposes, and by municipal corporations that taxation should be for corporate purposes. Taxes for municipalities were required not to exceed eight per cent. of taxable property. It is true, municipalities were allowed to tax, by a graduation tax, incomes, and to impose a graduated tax on occupations and business. By section 5, of article 10, in the Constitution of 1895, the General Assembly was required to compel municipal corporations to exact a tax on all the property, except that specially exempted under the Constitution, for corporate purposes, and for the payment of debts contracted under authority of law. We thus see what strides the or-

ganic law of the State has made in regulating this power
of taxation by the State and her municipalities.  What a
public purpose is to the State, a corporate purpose is to the
municipality.  It is the same thing in each, being differ-
ently named so as to emphasize the difference in territorial
limits.  In *Loan Association* v. *Topeka*, 20 Wallace, 655,
Mr. Justice Miller very ably discussed the necessity in a tax,
that it could only be legally laid for a public purpose.  It
is admitted that an effort is made by some persons to justify
the imposition of a special assessment, as they are called, by
claiming that such assessments are made for specific' divi-
sions of corporate territory, so that certain streets are called
tax districts; but it is enough for our purpose to say that in
our Constitution no power is given to the General Assembly
to carve the territory of the State into special tax districts
for State taxation except into counties, townships, school
districts, cities, towns and villages; and what is denied under
the Constitution to the General Assembly for State purposes
is equally denied to chartered cities, towns or villages, in
dividing up such cities, towns or villages, as the case may
be, into separate tax districts, to answer corporate purposes.
Wherever there is a public or corporate purpose, the whole
property of the city, town or village must be taxed to sub-
serve such public or corporate purpose.  It is admitted
everywhere that a public highway belongs to no one citizen
or set of citizens, to the exclusion of other citizens—it be-
longs to the public, and the public should keep it in repair.
Navigable streams are always open to the public as high-
ways.  Sidewalks are, after all, nothing but a part of the
highway or roadway.  The highway is for vehicles and for
men and animals to use whenever they see proper.  So with
sidewalks—all pedestrians may use them without let or hin-
drance; they belong to the public.  The same argument that
would convert a highway into a taxing district would con-
vert a sidewalk into one, and *vice versa*.  As well might it
be demanded that inasmuch as a state house or a court
house or a state college happens to be located nearer the

property of some citizens than others (as must be the case), therefore, such persons living nearest each of these must be responsible for a larger proportion of the expense of their construction than all other citizens. Such is not the law, and has never been the law, because opposed to common sense. W. L. Mauldin, James McPherson, and Theron Earle had good, hard paved sidewalks in front of their respective lots on Main street, in the city of Greenville. Both Mauldin and McPherson had taken the pains, before laying their sidewalks, to confer with the city authorities and locate the same on the grade required by said city authorities. But when the latter saw proper to regrade the roadway of Main street, the result was that these sidewalks in front of the lots owned by Mauldin, McPherson, and Earle were either too high or too low with reference to the new roadway. Hence the city council saw proper to regrade the sidewalks and lay afresh an improved pavement on the sidewalk. For this, for the distance of 105 feet, Mauldin was required to pay $174.50. Now, look at this proposition. Mauldin had, prior to the year 1896, under the direction of the city authorities, constructed a sidewalk and drain in front of his property, which sidewalk and drain comported with the grade of said Main street up to the year 1893. But the city authorities determined to improve Main street as a roadway by changing the grade, because thereby it facilitated public travel over said street, and such improvement was completed. Then the city council concluded to improve the sidewalks, so that the grade of the same, when paved, should be in keeping with the newly graded roadway on Main street, and to do this they assess two-thirds of the cost of the same upon the said W. L. Mauldin for his 105 feet frontage on Main street. Was this not all required for the benefit of the public? Who would be responsible for any damages to the pedestrian which might occur by reason of this defective sidewalk? Certainly not W. L. Mauldin, or McPherson, or Theron Earle, if such damages occurred on the pavement in front of their respective lots.

In *Mauldin* v. *City Council of Greenville*, 42 S. C., 293, this Court had announced that this State has repudiated, and still continues to repudiate, the doctrine of supposed benefit to owners of lots of land abutting on public streets in levying taxes, and we are now satisfied that such former decision, where it upheld assessments made upon owners of lots abutting on streets where improved sidewalks and drains are constructed, was wrong, and should be reversed, as opposed to our present Constitution.   Such conclusion on our part renders it unnecessary that we should pass upon any other questions raised by this appeal.

It is, therefore, the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *dissents.*