## 12183

### RUTLEDGE v. GREATER GREENVILLE SEWER DIST. *ET AL.*

(137 S. E., 597)

1. CONSTITUTIONAL LAW—PRESUMPTIONS ARE IN FAVOR OF CONSTITUTIONALITY OF STATUTE, AND INVALIDITY WILL NOT BE DECLARED UNLESS MANIFEST BEYOND REASONABLE DOUBT.—Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and the Courts should not declare a Statute unconstitutional unless invalidity is manifest beyond a reasonable doubt.

2. MUNICIPAL CORPORATIONS—BONDS OF SEWER DISTRICT HELD NOT VIOLATIVE OF CONSTITUTIONAL PROVISION LIMITING BONDED INDEBTEDNESS (ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1540]; ACT MARCH 30, 1925 [34 ST. AT LARGE, P. 744], AS AMENDED BY ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1537]; CONST. ART. 10, § 5, ART. 8, § 7).—Issuance of bonds authorized by Act March 23, 1926 (34 St. at Large, p. 1540), and Act March 30, 1925 (34 St. at Large, p. 744), as amended by Act March 23, 1926 (34 St. at Large p. 1537), creating the Greater Greenville sewer district, *held* not violative of Const, art. 10, § 5, limiting bonded indebtedness, in view of Const. art. 8, § 7, declaring such limitation inapplicable to bonded indebtedness in and by any municipal corporation where the proceeds of bonds are applied solely to purchase, establishment, and maintenance of sewer system.

3. MUNICIPAL CORPORATIONS—"MUNICIPAL CORPORATIONS," AS USED IN CONSTITUTION, HELD TO INCLUDE BODIES POLITIC ESTABLISHED BY LEGISLATURE WITH POWER TO PERFORM MUNICIPAL FUNCTIONS (CONST., ART. 8, § 7).—"Municipal corporation," as used in Const.,

Art. 8, § 7, providing that limitations on indebtedness "shall not apply to the bonded indebtedness in and by any municipal corporation, when the proceeds of the bonds are applied solely and exclusively for the purchase, establishment and maintenance of * * * a sewerage system," includes bodies politic and corporate established by the Legislature and having power to perform municipal functions such as establishment of sewer system.

4. MUNICIPAL CORPORATIONS—BONDS OF SEWER DISTRICT HELD NEGOTIABLE INSTRUMENTS, THOUGH NOT PART OF BONDED INDEBTEDNESS OF DISTRICT WITHIN CONSTITUTIONAL LIMITATIONS ·(ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1540]; CONST., ART. 10, § 5).—Bonds of Greater Greenville sewer district, issuance of which was authorized by Act March 23, 1926 (34 St. at Large, p. 1540), though not a part of the bonded indebtedness of the district contemplated, within Const. art. 10, § 5, *held,* nevertheless, negotiable instruments of the district, by reason of pledge of county's credit to their payment.

5. MUNICIPAL CORPORATIONS—STATUTES AUTHORIZING SEWER DISTRICT BONDS HELD NOT UNCONSTITUTIONAL AS AUTHORIZING LEVY OF TAX BY BODY POLITIC (ACT MARCH 30, 1925 [34 ST. AT LARGE, P. 744], AS AMENDED BY ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1537]; ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1540]; CONST., ART. 10, § 5).— Act March 30, 1925 (34 St. at Large, p. 744), as amended by Act March 23, 1926 (34 St. at Large p. 1537), creating Greater Greenville sewer district, and Act March 23, 1926 (34 St. at Large, p. 1540), authorizing issuance of bonds by the district, *held* not unconstitutional as authorizing the levy of a tax by a body politic other than a county, township, school district, city, town, or village in violation of Const. art. 10, § 5.

6. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—STATUTE AUTHORIZING SEWER DISTRICT BONDS HELD NOT UNCONSTITUTIONAL AS PROVIDING FOR LOCAL ASSESSMENT WITHOUT HEARING OF PROPERTY OWNERS (ACT MARCH 30, 1925 [34 ST. AT LARGE, P. 744], AS AMENDED BY ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1537]; ACT MARCH 23, 1926 [34 ST. AT LARGE, P. 1540]; CONST. ART. 1, § 5).—Act March 30, 1925 (34 St. at Large, p. 744), as amended by Act March 23, 1926 (34 St. at Large, p. 1537), and Act March 23, 1926 (34 St. at Large, p. 1540), creating Greater Greenville sewer district and authorizing issuance of bonds by district, *held* not violative of Const. art. 1 § 5, as in effect providing for local assessment based on special benefits without hearing of property owners or legislative determination of benefits.

Before DEVORE, J., Greenville, January, 1927. Affirmed.

Suit by James Rutledge against the Greater Greenville Sewer District and others, commissioners thereof. Decree for defendants, and plaintiff appeals. Affirmed.

The decree of Judge Devore is as follows:

This action was brought by a taxpayer of Greater Greenville sewer district to restrain defendants, as commissioners of said district, from issuing and selling $3,000,00 bonds for the purpose of "establishing, extending, enlarging and maintaining sewer systems and sewer lines" therein. The return admits the allegations of fact contained in the complaint, but denies the conclusions of law and sets forth additional allegations of fact and law. No traverse was filed to the return, and the allegations of fact therein contained are, therefore admitted. This being true, the controversy is exclusively one of law in which the constitutionality of certain Acts of the General Assembly hereinafter specifically referred to is assailed.

"Greater Greenville sewer district" is made by those acts a body politic and corporate embracing the territory known as "Greenville School District" and "Parker School District." The territory embraced in Greenville School District is coincident with the territory embraced in the City of Greenville with a small area in addition which has been added to that district since it was originally created. Parker School District embraces the mill communities adjacent to the City of Greenville and lying west of it. The population of Greenville School District and Parker School District is approximately 30,000 each, making the aggregate population of Greater Greenville Sewer District approximately 60,000. All of the raw sewerage from this territory empties in Reedy River, which runs through the City of Greenville, contaminating the waters of the stream to such an extent that a suit is now pending to enjoin the City of Greenville from depositing raw sewerage in the stream and for damages. In order to remedy this situation, the acts creating Greater

Greenville Sewer District were passed and bonds were authorized to be issued for the purpose of installing trunk lines to carry the sewerage of Parker School District and Geenville School District to a sewerage disposal plant below the City of Greenville, where it is to be chemically treated and the water returned to Reedy River in a pure state. This plant will obviate the unsanitary situation existing, and will adequately dispose of the sewerage in this large territory.

Upon the passage of the acts, the question of the issuance of the bonds was submitted to a vote of the people of Greater Greenville Sewer District and a majority voted in favor of the issuance of the bonds.

The acts which are assailed are attached in full to the complaint as exhibits, and are in effect as follows:

(a) Act approved March 30, 1925, 34 Statutes, 744, creating Greater Greenville Sewer District as a body politic and corporate, defining the area embraced therein, providing for the selection of a sewer commission and defining their powers and duties.

(b) Act approved March 23, 1926, 34 Statutes, 1537, amending Act approved March 30, 1925, and extending and defining the powers and duties of the commission provided for in the original Act.

(c) Approved March 23, 1926, 34 Statutes, 1540, authorizing an election upon the issue of bonds by Greater Greenville Sewer District to the amount of $3,000,000, and providing for said issue.

The validity of these Acts is assailed upon the following grounds:

(1) That if bonds to the amount authorized were issued the bonded indebtedness of the district will exceed 8 per cent. of the assessed valuation of the property therein in violation of Section 5, Art. 10, of the Constitution of South Carolina.

(2) That if bonds to the amount authorized are issued the bonded indebtedness of the district together with the bonded indebtedness of the school districts embraced therein will exceed 15 per cent. of the assessed valuation of the property included in said sewer district.

(3) That if the said bonds are not a part of the bonded indebtedness of said district as contemplated by Section 5, Art. 10, of the Constitution, that the bonds proposed to be issued will not be negotiable instruments of the said district.

(4) That if the Court should hold that Greater Greenville Sewer District is a body politic charged with the municipal duty of providing a sewerage system, and under the proviso of Section 7 of Article 8 of the Constitution of South Carolina is not subject to the constitutional debt limit provided in said Section and in Section 5 of Article 10, that the said Acts are unconstitutional because they authorize the levy of taxes by a body politic other than a county, township, school district, city, town, or village in violation of Section 5 of Article 10 of said Constitution.

(5) That if the said bonds are not part of the bonded indebtedness as contemplated by Section 5 of Article 10 and Section 7 of Article 8 of the Constitution of South Carolina because said Acts provide in reality for a local assessment upon the freeholders based upon special benefits derived from a local improvement, that said Acts are unconstitutional because no provision is made for a hearing of the property owners as to the amount and validity of the assessment and there is no legislative determination of the benefits such as might render such a hearing unnecessary, in violation of Section 5 of Article 1 of the Constitution of South Carolina.

The questions raised, which will be considered in the order in which they have been presented, are to be resolved "in the light of the familiar and well-settled

general rule that every presumption must be indulged in favor of the constitutionality of an Act of the Legislature, and that Courts 'should not declare a statute unconstitutional unless the invalidity is manifest beyond a reasonable doubt.' " *Battle v. Willcox,* 128 S. C., 500; 122 S. E., 516. *Poulnot v. Cantwell,* 129 S. C., 171, 176; 123 S. E., 651.

1 and 2.   Will the bonds if issued violate the provisions of Section 5, Art. 10, of the Constitution of South Carolina, being in excess of the limits therein provided?

The decision in this question is greatly simplified by the decision of the Supreme Court in the case of *Evans v. Beattie* 137 S. C., 496; 135 S. E., 538, the authorities generally being so carefully considered and reviewed that it is necessary to reconsider them. There an action was brought to enjoin the Board of Coastal Highway Commissioners from carrying out the provisions of the Act approved March 12, 1926 (34 Statutes 1492), commonly known as the Coastal Highway Act. By the provisions of that Act several counties in the State of South Carolina were united into a highway district for the purpose of building hard-surface highways extending through those counties. The Act, among other things, created six counties into a political subdivision of the State making the inhabitants thereof a body politic and corporate under the name of the Coastal Highway District, provided for the appointment of a board of highway commissioners, authorized the execution of certain agreements, authorized the commissioners to issue negotiable bonds of the district in an amount specified therein, provided for "The levy of an annual *ad valorem* tax upon all taxable property in the district sufficient to pay the principal and interest upon bonds issued under the Act, as such principal and interest become due." Section 11. The Act further provided for the levy of a tax by the Comptroller General to be collected by the

county treasurers of the several counties of the district and paid to the State Treasurer to be applied to the payment of the principal and interest on the bonds as they became due, and that the gasoline tax be applied also to the payment of the principal and interest on the bonds, and further that all bonds and notes issued under the Act should be " 'direct and general obligations of said district, payable primarily from said property tax, which however, shall be reduced as hereinbefore provided.' "  Section 11 (c).

The objection was made that the Act was in violation of Article 10, § 5, of the State Constitution, which provides a limitation upon the bonded debt of certain subdivisions of the political subdivisions of the State.

In passing upon the objections to the Act, the Court held by a unanimous decision, citing in support thereof cases from the United States Supreme Court, the Supreme Court, of South Carolina and of other states, that the obligations were not a part of the bonded indebtedness of the district within the meaning of Section 5 of Article 10 of the Constitution, but were obligations of the district to be paid by a special assessment upon the property owners therein made because of special benefits to be received by them by reason of the use of the proceeds of the sale of the bonds for improvements made in the district.

In the decision of this particular question the Court said in the case of *Evans v. Beattie, supra:* "It is specifically held in the case of *Jackson v. Breeland,* 103 S. C., 184; 88 S. E., 128, as has been hereinbefore stated, that the power of the General Assembly to create special tax districts for local improvements, is not derived from Article 10, Section 5, of the Constitution, and is not affected thereby.  This is in line with the current of authorities upon the subject."

In the case at bar it is obvious from the statement of facts hereinbefore made that all the property within Greater

Greenville Sewer District will be beneficially affected by the establishment of the sewer system contemplated by the Acts in question, and that the obligations of the district are not bonds in the meaning of Section 5 of Article 10 of the Constitution, but are obligations of the district, to be paid by an assessment based upon benefits to be received by the freeholders of said district, and therefore the issuance of the so-called bonds is not derived from this Section of the Constitution or affected thereby.

Again, in *Evans v. Beattie,* and also in *Briggs v. Greenville County,* 137 S. C., 288; 135 S. E., 153, the Court holds: "That acts authorizing reimbursement to counties for money advanced for road construction from special funds consisting of gasoline tax, automobile license tax and federal aid" are not violative of Section 5, Art. 10, of the Constitution because obligations "secured by the pledge of a fund which might reasonably be expected to be sufficient to meet the obligations without resorting to the levy of a property tax, did not constitute bonded debt within the meaning of the constitutional limitations, notwithstanding that the full faith, credit, and taxing power of a political subdivision were pledged for the payment of the obligations." To sustain this proposition the Courts cited the following cases: *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421. *Brownlee v. Brock,* 107 S. C., 230; 92 S. E., 477. *McIntyre v. Rogers,* 123 S. C., 334; 116 S. E., 277. *Barnwell v. Matthews,* 132 S. C., 314; 128 S. E., 712. *Sullivan v. City Council of Charleston,* 133 S. C., 189; 133 S. E., 340.

In *Lillard v. Melton, supra,* the obligations were secured by the income of the canal company, and in *Sullivan v. City Council* were secured by past-due and unpaid taxes. In neither of these two cases could it be determined the amount of income to be derived from the sources specified, and there was no means of ascertaining whether such income would be sufficient to pay the obligations or the interest thereon, and in *Briggs v. Greenville County, supra,*

the Court said: "Whether the county's share of the gasoline tax will be sufficient to provide for the payment of the interest on the proposed bond issue, without resorting to a property tax, does not appear from the record in this case."

Notwithstanding this, it was held that the obligations were valid obligations and were not violative of Section 5, Art. 10, of the Constitution. In the case at bar provision is made by Section 6 of the amendatory act creating Greater Greenville sewer district for the payment by the owners of property not having lateral connections to make arrangements whereby the costs of construction of said lateral lines shall be assumed by such property owners. Such provision in the act is similar to the provisions in the acts contained in *Evans v. Beattie, Briggs v. Greenville County, supra,* and I therefore hold that for this reason also the obligations of the district when issued will not be in violation of Section 5 of Article 10 of the Constitution.

For another reason the bonds are not subject to the objection made. By a proviso of Section 7 of Article 8 of the Constitution of South Carolina, which limits the amount of bonded indebtedness of municipal corporations, it is provided: "That the limitations imposed by this Section and by Section 5 of Article 10 of this Constitution shall not apply to the bonded indebtedness in and by any municipal corporation when the proceeds of said bonds are applied apply to the bonded indebtedness in and by any municipal maintenance of a water works plant or a sewerage system or lighting plant, and when the question of incurring such indebtedness is submitted to the freeholders and qualified voters of such municipality as provided in the Constitution upon the question of other bonded indebtedness."

While the term "municipal corporation" is generally understood to mean cities and towns incorporated under the general laws of the State, it is also true that where, as in the case at bar, a body politic and corporate is established by the Legislature with power to per-

form municipal functions, such as the establishment of a sewer system for the benefits of the inhabitants of such area, and with power to issue bonds for the purpose of raising funds for such purposes, that such an area being a public corporation and having certain municipal powers and duties, is properly held to be a municipal corporation within the meaning of the section of the Constitution. "Such districts (school, road, fire, irrigation, etc.) are mere *quasi* corporations, but it has been held that such a district is a 'corporation for municipal purposes' within the meaning of a constitutional provision." 19 R. C. L., 696.

"For some purposes by virtue of particular laws boards of education and school districts have been held to be municipal corporations, as in a statute conferring power to issue bonds, or in a law limiting the indebtedness of municipal corporations." 1 McQuillin Municipal Corporations, 278.

To the same effect are *Davis v. Steuben School Township,* 19 Ind. App., 694; 50 N. E., 1. *Maxon v. School District,* 5 Wash., 142; 31 P., 462; 32 P., 110.

In *Glenn v. County Commissioners of York,* 6 S. C., 412, the Court held that the county commissioners had power to subscribe to stock of a railroad company without referring the matter to the people of the county. In the circuit decree, which was affirmed by a *per curiam* order, it is said: "The distinction attempted to be drawn, in the argument of the plaintiffs, between counties and municipal corporations, does not appear to be very material to the main issue, nor is it well founded. That a county is a 'municipal corporation' cannot well be denied. Vide 2 Kent Comm., 275; Bla. Comm., 4, 411; *People v. Morris,* 13 Wend. (N. Y.) 325–335. *Horton, Judge & Co. v. Mobile County School Comm.,* 43 Ala., 598. 2 *Bouvier Law Dic.,* 193. And in *Thompson v. Lee County,* 3 Wall., 327; 18 L. Ed., 177, the Supreme Court of the United States uses the expression 'a county or other municipal corporation.' In that case Mr.

Justice Miller says: 'Most certain it is that as to all their rights, powers and responsibilities, three grand classes of corporations exist: First, political or municipal corporations, such as counties, towns, cities, etc. *Vide* also *Swann v. Williams*, 2 Mich., 427; 1 Coler on Munic. Bonds, 374."

Being then a "municipal corporation" within the meaning of Section 7 of Article 8 of the Constitution, there is under the proviso of said Section no limit to the amount of bonds which may be issued for establishing a sewerage system.

3. If the bonds are not a part of the bonded indebtedness of the district as contemplated by Section 5 of Article 10, are they negotiable instruments of said district?

From what has been heretofore said the conclusion irresistibly follows that the obligations in question although not a "bonded debt" within the meaning of said Section for the reasons already stated, are still negotiable instruments of said district. This is true because of the fact that the credit of the county is pledged to their payment. Since the purchaser of the bonds has the right to rely upon the credit of the county for the payment thereof, the obligations when issued are not only binding obligations of the district, but are negotiable and unassailable in the hands of an innocent purchaser for value.

4. Are the acts unconstitutional because they authorize the levy of tax by a body politic other than a county, township, school district, city, town, or village, in violation of Section 5, Article 10, of the Constitution?

This exact question has been passed upon in *Evans v. Beattie* and *Briggs v. Greenville County*, *supra*. In the former case it is clearly shown that the Constitution of the State is not to be regarded as a grant of power, but rather as a limitation upon the power; that all legislative power is vested in the General Assembly subject to restrictions contained in the Constitution; and that the Legislature had

the unquestioned power to create special taxing districts, as the one here created, for the purpose of making local improvements and charging the costs thereof in whole or in part upon the property of such district, either according to valuation or the superficial area or frontage. The Court also held in the Evans case that this construction of the Constitution had been adopted by the General Assembly of South Carolina in the enactment of numerous statutes and that the construction by the Legislature was entitled to weight in doubtful cases and should be followed, and cited several statutes similar to the one at bar as evidence of the construction put upon those acts by the Legislature itself. Obviously then the Legislature had the authority to create Greater Greenville sewer district and authorize the levy of taxes therein based upon the special benefits received by the property owners therein.

5. The only remaining question is whether or not the acts are unconstitutional because no provision is made for the hearing of property owners under Section 5 of Article 1 of the Constitution of South Carolina.

This question is satisfactorily answered in *Briggs v. Greenville County,* where it is held that an act similar in many respects to the ones here in question is not in conflict with Article 1, Sections 5 and 6, of Article 10 of the Constitution of South Carolina, or the Fourteenth Amendment to the Constitution of the United States.

It is therefore ordered, adjudged, and decreed that the bonds of Greater Greenville sewer district to the amount of $3,000,000 be, and they are hereby, declared to be, when issued, valid, legal, and negotiable obligations of the said district. Further ordered, adjudged, and decreed that the complaint herein be, and the same is hereby, dismissed, and the rule to show cause hereinbefore issued by this Court be, and the same is hereby, dissolved.

*Mr. Wilton H. Earle,* for appellant.

200    Derrick v. Cola. Ry., Gas & Electric Co.

Syllabus                              [139 S. C.

*Mr. E. M. Blythe,* for respondent.

March 24, 1927.

The opinion of the Court was delivered by Mr. Justice Cothran.

The Court is satisfied with the decree of his honor, Judge De Vore, and for the reasons stated by him the same is affirmed.

Mr. Chief Justice Watts, and Messrs. Justices Blease, Stabler, and Carter, concur.