17404

CITY OF GREENVILLE, S. C., Appellant, v. GREATER GREENVILLE SEWER DISTRICT, Respondent

(102 S. E. (2d) 524)

*Messrs. J. Wilbur Hicks* and *W. H. Arnold,* of Green-ville, *for Appellant.*

*Messrs. J. D. Todd, Jr.,* and *J. M. Wells,* of Greenville, *for Respondent,*

March 25, 1958.

TAYLOR, Justice.

The sole question involved in this appeal is whether Appellant or Respondent is financially responsible for the construction and maintenance of certain sewer lines in the City of Greenville.

In 1925, the General Assembly created the Greater Greenville Sewer District (Act No. 362, 34 St. at Large, p. 744) which embraced what was then the School District of the City of Greenville and the Parker School District, *Rutledge v. Greater Greenville Sewer District,* 139 S. C. 188, 137 S. E. 597.

In 1950, Greenville having undergone considerable expansion and growth, it became necessary to augment its Sewerage facilities, and the question arose as to who was financially responsible.

In 1951, action was commenced by way of Mandamus, seeking an Order to compel Respondent, Greater Greenville

Sewer District, to construct at its expense certain sewer lines to a newly constructed housing project located in what had been a part of the Overbrook Water and Sewer Sub-district, but at the time of the commencement of this action, was incorporated into the City of Greenville. "Main trunk lines" had already been constructed by the Greater Greenville Sewer District and the lines in question connect to one of these which leads to the treatment and disposal plant.

The question being a pressing one, it was agreed by the Appellant and Respondent that Appellant, City of Greenville, would construct said lines with the understanding that if it should be judicially determined that such was the legal duty of Respondent, the Appellant would be reimbursed for the costs; and the determination of this question rests upon what the General Assembly meant by the use of the words "main trunk lines" in the 1929 Act (No. 443, 36 St. at Large, p. 864).

A General Order of Reference was taken and the matter heard by the Master in Equity, who found that the responsibility was that of Greater Greenville Sewer District. The County Judge, however, overruled the Report and ordered the petition dismissed, holding that the responsibility was that of the City of Greenville. At the hearing before the Master a number of engineers and experts were introduced as witnesses, who gave various definitions of what in their opinion constituted trunk lines, main lines, main trunk lines, lateral lines, etc., all of which lends credence to the statement found in "American Sewerage Practice" by Metcalf & Eddy, under "Classification of Sewers," that:

"* * * Until quite recently there was considerable confusion in the terms used to designate different classes of sewers. A classification is necessary because it affords the only convenient means of discussing collectively the features of sewers for the same purpose in different parts of a system or in different cities, but the different classes necessarily run into each other somewhat so that no clear line of distinction between some of them is practicable."

Webster's Unabridged Dictionary defines "main" as: "Principal, chief in size, rank, importance, etc."

In instant case, the various definitions are of little aid as we are here construing the intent and purposes of a statute, which divides the sewers into only two classifications, "lateral" and "main trunk lines". At the time of the formation of the Greater Greenville Sewer District, the City of Greenville was already served by a sewer system which emptied into the Reedy River, as there had not been constructed, at that time, a treatment and disposal plant. In 1929, the General Assembly passed an Act (No. 443) which provided that the District should be surveyed and divided into two types of sub-districts: "Class 'A.' Subdistricts which already have lateral lines installed," (the City of Greenville being a Class "A" sub-district) ; and "Class "B". Subdistricts which have no lateral lines installed."

The Act also set forth the method of organizing other Class "B" sub-districts when desired and the installation of sewer systems to connect with the "main trunk lines" leading to the disposal plant of the Greater Greenville Sewer District, the costs to be paid by the Class "B" sub-districts, it being stated:

"* * * That all costs of the installation of said later lines and of connecting them with the main trunk lines shall be paid by the subdistrict in which said laterals are installed. Where the lateral sewer lines of subdistricts are connected with the main trunk lines, subdistricts, shall be charged on the basis of the cost of connections with vitrified clay pipe; * * *". § 6.

Section 2 of said Act relates to the powers of the Commission and sets forth that:

"No action shall be taken by said Commission as to Class 'A' except to make such regulations as they may deem necessary under the powers hereinafter given to said Commission."

This indicates that inasmuch as the Commission had already provided a treatment plant and "main trunk lines"

leading there to from the Class "A" sub-districts, the Commission's duties relative thereto consisted of making such regulations as it may deem necessary under its powers. A careful study of the record, which includes a survey of the Greater Greenville Sewer District, and the legislative history which is found in the following Acts: Act No. 362, 1925, 34 St. at Large, p. 744; Act No. 784, 1926, 34 St. at Large, p. 1537; Act No. 443, 1929, 36 St. at Large, p. 864; Act No. 996, 1930, 36 St. at Large, p. 1804; Act No. 509, 1933, 38 St. at Large, p. 898; Act No. 474, 1935, 39 St. at Large, p. 890; Act No. 407, 1941, 42 St. at Large, p. 978; Act No. 408, 1941, 42 St. at Large, p. 980; Act No. 916, 1946, 44 St. at Large, p. 2680; Act No. 545, 1949, 46 St. at Large, p. 1274; Act No. 1232, 1950, 46 St. at Large, p. 3121; impels us to the conclusion that the legislature did not use the term "main trunk lines" purposelessly but did so advisedly, with the intent to differentiate such lines from ones of lesser capacity, which ordinarily would be classed as trunk lines but which feed into larger "main trunk lines" and thereby to the treatment and disposal plant; that the lines in question are the responsibility of Appellant; that the Order appealed from should be affirmed; and it is so ordered. Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ., concur.