## 17943

Robert G. DISTIN, individually and as a representative of other taxpayers and homeowners in Jackson-Gills Creek Public Service District, Appellants, v. R. A. BOLDING, R. C. Johnson, J. R. Powell, Fred D. Townsend, Robert A. Webert and C. Laney Talbert, individually and as Commissioners of Jackson-Gills Creek Public Service District, and Daniel R. McLeod, Attorney General of South Carolina, Respondents.

(126 S. E. (2d) 649)

*Messrs. Rogers & McDonald,* of Columbia, *for Appellant,*

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, and *Irvine F. Belser, Jr.,* of Columbia, *for Respondents,* 

July 17, 1962.

Moss, Justice.

This action is one under the "Uniform Declaratory Judgments Act", Section 10-2001 *et seq.,* 1952 Code of Laws. The purpose of the action is to determine the constitutionality of certain provisions of Act No. 1114, of the Acts of 1960, 51 Stats. 2803, as subsequently amended by an Act of the General Assembly, approved March 30, 1962. By this Act the General Assembly created Jackson-Gills Creek Public Service District in Richland County, hereinafter referred to as the District. In so doing, it constituted a large area of Richland County into a special purpose district whose func-

tion is to construct and operate sewage disposal facilities. The area is thickly populated and at the present time has no public sewer system. It is conceded that a great need therefor exists.

The estimated cost of constructing the sewer system is $3,000,000.00. To provide the funds for such construction the District proposes to issue General Obligation Bonds, which the Act authorized, if the election required therein were held and resulted favorably. The election has been held and did result favorably. The Act also empowers the District to impose charges for the use of the sewer system and the plan to be placed into effect contemplates a schedule of charges designed not only to provide sufficient moneys for operation and maintenance of the system, but also to provide funds to be used to meet a portion of the debt service to result from the issuance of the bonds. The Act empowers the District to additionally secure its authorized General Obligation Bonds with a pledge of the net revenues derived from the operation of its sewerage disposal facilities. While the District will covenant to effect the levy and collection of sufficient taxes to meet the payment of the principal and interest of its General Obligation Bonds as they fall due, it is believed that sufficient net revenues will be derived from the operation of the sewage disposal facilities to result in a substantial reduction of the *ad valorem* tax levy otherwise to be imposed. In order to insure sufficient customers and adequate revenues the Act empowers the District's governing agency to adopt regulations requiring all those to whom the sewer system will be available to effect connections thereto and to use the same.

The plan here is in many ways similar to that recently upheld by this Court in the case of *Ruggles et al. v. Padgett et al.*, S. C., 126 S. E. (2d) 553. There are however differences which require consideration. In the *Ruggles case,* the Hanahan Public Service District proposed to make a charge for sewer services generally similar to the charges to be imposed

by the District in the instant case. However, the Hanahan Public Service District had arranged for the collection of its sewer charges through a contractual arrangement with the Charleston Water Works Commission. By this arrangement the Charleston Water Works Commission undertook to bill its water customers in the District for the water service furnished by it and for the sewer service furnished by the District by means of a combined bill with a provision that unless the bill was paid in full, water service would be discontinued. Here the District cannot enter into a similar contractual arrangement for the reason that there is no single agency operating a water works system throughout the District. Portions of the District are served by public systems but other portions are served by private water companies and some dwellings have individual wells. Therefore, the plan put into effect by the Hanahan District, and approved by this Court in the *Ruggles case,* would not be feasible here. The District here proposes to make its charge for sewer service a lien upon the property served in the manner provided by the Act and after the hearing prescribed by the 1962 amendatory legislation.

The exceptions of the appellants raise the following questions which are disposed of in the order here stated: (1) May the General Assembly delegate, through the means of a special Act, police powers to the District Commission enabling it to adopt mandatory regulations requiring all persons within the District owning property to connect that property to, and use the public sewer system of the District? (2) Has the General Assembly the power to authorize the District Commission to impose a special charge or assessment upon property owners in the District utilizing the public sewer system which will constitute a lien upon their property? (3) Does the statute as amended by the 1962 Act of the General Assembly provide for adequate public hearings prior to the imposition of the assessment for sewer service?

In the *Ruggles case,* we held that the General Assembly might, through the means of special legislation, delegate police powers to the Hanahan Public Service District enabling its Commission to adopt mandatory regulations requiring connection to and use of the District sewer system. The arguments advanced here that such special legislation is proscribed by paragraph 9, Section 34, Article III, of the South Carolina Constitution are similar to those unsuccessfully advanced in the *Ruggles case.* The question must be decided adversely to the appellants' contention on the authority of the *Ruggles case* and for the reasons set forth in that opinion.

In the *Ruggles case* we held that the charge to be imposed by the Hanahan District was not an assessment for the reason that no lien would attach to the property utilizing the sewer facilities. That holding was predicated upon decisions of this Court in the cases of *Evans et al. v. Beattie et al.,* 137 S. C. 496, 135 S. E. 538; *Briggs v. Greenville County et al.,* 137 S. C. 288, 135 S. E. 153; and *Rutledge v. Greater Greenville Sewer District,* 139 S. C. 188, 137 S. E. 597. On that basis we held that no hearing need be provided the property owner preliminary to the imposition of the charge. Here, however, the charge if not paid is to become a lien against the property affected and the challenge is made that, in the absence of specific constitutional authorization, the General Assembly may not impose or delegate power to impose the assessment against the affected property. It is also contended that the provisions of the 1962 amendatory legislation prescribing the method for the holding of the hearings prior to the imposition of the assessments are not adequate. This twofold attack raises the second and third questions previously set forth.

The right of the General Assembly to authorize the District Commission to impose a special assessment upon property utilizing the public sewer system has three aspects. First, there is involved the question of whether, in the absence of specific constitutional authorization therefor, the General

Assembly has the power to impose the assessment because of the supposed benefit conferred. Secondly, there is a question as to whether such assessment must not be uniform, that is to say in proportion to the assessed value of the property to be assessed. Finally, there is involved the right of the Legislature to make provisions for such assessment through the means of a special act.

It is the general rule that the legislative branches of state governments have the inherent power to make provisions for assessing of real property for benefits conferred. 17A Am. Jur., Drains and Sewers, Section 62, at page 485; 48 Am. Jur., Special or Local Assessments, Sections 8, 11 and 12, at pages 571-573.

However, it is contended that South Carolina is an exception to the general rule. It is specifically contended that the decisions of this Court in the cases of. *Mauldin v. City Council of Greenville,* 53 S. C. 285, 31 S. E. 252, 43 L. R. A. 101; *Stehmeyer v. City Council of Charleston,* 53 S. C. 259, 31 S. E. 322; and *Jackson v. Breeland et al.,* 103 S. C. 184, 88 S. E. 128, establish the rule in South Carolina that special assessments against property for supposed benefits may not be imposed by the General Assembly either directly, or indirectly, by means of delegating that power to subordinate governmental agencies, without specific constitutional authorization therefor. It was held by this Court in the *Mauldin case* that a statute authorizing incorporated cities to levy assessments to provide for a portion of the cost of laying sidewalks was "opposed to our present (1895) Constitution." Later that year, the Court in the *Stehmeyer case,* following its holding in the *Mauldin case,* refused to uphold a statute which permitted the City of Charleston to levy front foot assessments for the purpose of raising moneys to meet the cost of installing a public water works system. In the *Jackson case,* the Court, by *obiter dicta,* implied that the validity of a drainage assessment depended upon a constitutional amendment which specifically authorized the assessment.

We agree with the appellants that the Legislature has observed the ruling of the Supreme Court in the *Mauldin case* insofar as street assessments are concerned and has provided, through appropriate proposing resolutions, constitutional amendments which specifically authorize incorporated cities and towns to impose paving assessments upon property fronting upon the streets improved. However, we agree with respondents that, while the *Mauldin case* has not been overruled, its effect has been strictly limited to situations involving street improvement assessments imposed by incorporated municipalities.

In the case of *Evans et al. v. Beattie et al.,* 137 S. C. 496, 135 S. E. 538, there was involved the validity of a statute by which the General Assembly constituted several counties into the Coastal Highway District and imposed thereupon a special assessment for local highway improvements. It was there argued that the General Assembly did not have this power and the decisions in *Mauldin v. City Council of Greenville,* 53 S. C. 285, 31 S. E. 252, 43 L. R. A. 101, and *Jackson v. Breeland et al.,* 103 S. C. 184, 88 S. E. 128, were advanced to support this argument. In rejecting such argument and upholding the right of the General Assembly to create special tax districts and impose special assessments for benefits thereon, this Court in the *Evans case* clearly defined the limits of the Mauldin decision. There it was held that the true basis of the Mauldin decision was the conclusion of this Court that because of the provisions of Section 5 of Article X, of the 1895 Constitution, the municipality had only the power of levying taxes for corporate purposes which had to be uniform upon all of the property within the city. Furthermore, in the *Evans case,* this Court labeled the implications of the *Jackson v. Breeland* decision, that the General Assembly cannot create special tax districts with the power of special assessments for the desired improvements as *dicta* and refused to be controlled thereby.

The Court went on to review the authorities and noted that almost without exception, Courts of other states had

held that, unless restrained by the Constitution, the General Assembly might impose assessments upon property for benefits conferred. It stated its conclusion as follows:

"We think it is clear therefore that the Coastal Highway Act is the exercise of the power of the General Assembly to impose a special assessment for local improvements and not a general tax for public purposes, and that this power is derived from the general legislative powers of the General Assembly, not restricted by any constitutional provisions or by the absence of special constitutional authority. * * *"

In the case of *Rutledge v. Greater Greenville Sewer District et al.,* 139 S. C. 188, 137 S. E. 597, this Court upheld the establishment of a special purpose district to provide public sewers and the levy of assessments in the manner of an *ad valorem* tax upon all the property in the district to meet the payment of the principal and interest of bonds issued to build the sewer system.

It is therefore clear that the decisions in the *Mauldin, Stehmeyer* and *Jackson cases* are not controlling here.

As is contended by the respondents, the pattern upheld in the *Evans case* and the *Rutledge case* has been more or less consistently followed by the General Assembly in making provision for the construction of water or sewer systems by the establishment of special purpose districts. This pattern involves the levy and collection of district wide *ad valorem* taxes in an amount sufficient to provide for the payment of all debt service. These assessments are measured by the value of the property as the same is assessed for other taxation. Hence, the assessment is uniform insofar as the provisions of Section 1, Article X of the South Carolina Constitution are concerned. While in this particular case there will be *ad valorem* taxes similar in all respects to those imposed by the Acts upheld in the *Evans* and *Rutledge cases,* there is also to be assessments whose quantum is measured by the benefit conferred upon the particular property utilizing the sewage facilities rather than by ·its

assessed value. Therefore, it is contended that this part of the plan is invalid because it does not observe the requirements of uniformity prescribed by Section 1 of Article X.

This contention is likewise decided adversely to the appellants by the *Evans case*. There the opinion states that the imposition of an assessment for the expenses of the local improvement upon adjoining lands benefited by it, although an exercise of the taxing power is not taxation within the provisions of the State Constitution regulating or prescribing the manner of taxation. And again in the *Rutledge case* the Court observed that the Legislature had the unquestioned power to create special taxing districts for the purpose of making local improvements and charging the costs thereof in whole or in part upon the property of such district either according to valuation or the superficial area or frontage. These holdings are in accord with the general rule of law. 17A Am. Jur., Drains and Sewers, Section 66, at page 488.

There is no merit in the contention that the General Assembly may not effect the imposition of assessments through the means of special legislation. If the method of financing can be accomplished by an unlimited *ad valorem* taxation, there is no reason why it cannot be done through assessments, for there is nothing unique about an *ad valorem* tax levy, which would exempt it alone from the provisions of subdivision 9, Section 34, of Article III, of the Constitution. It is within the right of the General Assembly to create a special purpose district without regard to the prohibition of subdivision 9 of Section 34 of Article III, *Mills Mill et al. v. Hawkins et al.,* 232 S. C. 515, 103 S. E. (2d) 14; and the right to create special purpose districts by special acts includes necessarily the incidental right to provide methods for financing projects committed to them, whether in the manner of an *ad valorem* tax or otherwise.

The final question for disposition regards the adequacy of the hearing provided by the 1962 amendatory legislation. Since the special charge for use of the sewer facilities is to become a lien upon the property it

is unquestionably an assessment under the decisions of this Court. The question is therefore whether a hearing is necessary and if so, does the statute adequately provide for such hearing. While the General Assembly has the power to levy an assessment, without providing for hearings to be given to those affected thereby, *Sanders v. Greater Greenville Sewer District et al.*, 211 S. C. 141, 44 S. E. (2d) 185; *Chesebro v. Los Angles County Flood Control District et al.*, 306 U. S. 459, 59 S. Ct. 622, 83 L. Ed. 921, it seems clear that where the Legislature, instead of determining for itself what benefits will be conferred, submits the question to some board or other agency with administrative or *quasi*-judicial authority, the inquiry becomes in its nature judicial in such a sense that property owners are entitled to a hearing or an opportunity to be heard before the assessments are to be levied. *Sanders v. Greater Greenville Sewer District et al., supra; Hancock et al. v. City of Muskogee et al.*, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081.

Here it is clear that the Legislature has not levied the assessment for the benefit to be derived by the properties from the sewer system. Instead it has delegated the power to the governing agency of the district to impose a schedule of rates or charges for the use, and the charge so imposed becomes a lien upon the property presumably benefited thereby. In this case a hearing is clearly necessary, a fact recognized by the General Assembly in 1962 when it cured the omission in its original enactment, by providing that before making any sewer connection charge or sewage disposal service charge which would become a lien upon the property affected, or any subsequent increase thereof, not less than ten days' written notice shall be given to the affected property owner notifying him of the nature and quantum of the charge and providing such property owner an opportunity to appear and be heard in person or by counsel. Following such a hearing, action is to be taken by the Commission and notice of its decision is to be given to the property owner not less than ten days prior to the effective

date of the charge. It is further provided that any property owner aggrieved by the action of the Commission may proceed by certiorari in the Court of Common Pleas for Richland County to have that Court review the action taken by the Commission and determine the validity and reasonableness of the charge.

The section of the Act imposing a lien was further amended so as to provide that if the notices and hearings prescribed by the other provisions of the amendatory legislation shall have been given and held, then in such event the charges duly imposed should constitute a lien upon the real estate to which the service was rendered for so long as the fees or charges remain unpaid; and that, in addition to such other rights and remedies as may be available to the Commission for the collecion thereof, the lien may be enforced by the Commission in the same manner and fashion as the lien of property taxes upon real estate.

The foregoing makes it clear that no property owner in the District will be deprived of his property without due process of law. The hearing provided for each property owner, after due notice, and before the imposition of any assessment, meets the requirement of due process under the State and Federal Constitutions. *Chesebro v. Los Angeles Flood Control District et al.,* 306 U. S. 459, 59 S. Ct. 622, 83 L. Ed. 921; *Sanders v. Greater Greenville Sewer District et al.,* 211 S. C. 141, 44 S. E. (2d) 185.

All exceptions are overruled and the order of the Circuit Court is affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.