## 19671

Herbert J. WRIGHT, Individually and representing all other taxpayers and property owners within the Metropolitan Sewer Subdistrict of the Greenville County Sewer Authority, similarly situated, Appellant, v. M. Graham PROFFITT, III et al., Respondents.

(198 S. E. (2d) 275)

*Messrs. Ashmore & Haas* of Greenville, *for Appellant,* cite:

*Messrs. Mann, Foster, Richardson & Fisher,* of Greenville, *Sinkler Gibbs Simons & Guerard,* of Charleston, *and Daniel R. McLeod, Atty. Gen.,* of Columbia, *for Respondents,* cite:

August 2, 1973.

BRAILSFORD, Justice:

The taxpayer's action challenges the constitutionality of Act No. 687 of the Acts of 1969, which created the Metropolitan Sewer Subdistrict (hereinafter called "the subdistrict") of the Greenville County Sewer Authority, and Act No. 1842 of the Acts of 1972, which authorized the issuance of up to $10,000,000.00 in bonds by the subdistrict. The members of the subdistrict's governing board (the Commission) and the Attorney General are defendants.

The Greenville County Sewer Authority (formerly the Greater Greenville Sewer District) is a special taxing district of almost fifty years' standing. From its inception the Authority has only been authorized to construct trunk sewer

lines and disposal plants; the construction of lateral, or collector, sewer lines has always been left to municipalities or subdistricts within the Authority's territory. Over the years, a number of such systems were installed by such municipalities and by sewer subdistricts which were organized for that purpose. Finally, the 1969 Act created the Metropolitan Sewer Subdistrict, composed of substantially all of the area within the boundaries of the Authority not already included in a municipality or subdistrict. After engineering studies authorized by the 1969 Act were carried out, the 1972 Act was passed, authorizing the bond financing and spelling out in much greater detail the boundaries and powers of the subdistrict.

Shortly after passage of the 1972 Act, the Commission adopted a plan to sell bonds in five annual issues aggregating the authorized $10,000,000.00, the first issue of $2,200,-000.00 to finance initial construction in Piedmont Park. The proceeds of the remaining annual issues will be used to construct sewer lines in nine other heavily populated areas of the subdistrict which, with Piedmont Park, are scattered throughout the subdistrict but constitute a relatively small part of its area. The General Assembly made the following finding with respect to benefits to the whole subdistrict which will result from installing sewer lines in the proposed area:

"(T)he General Assembly recognizes that the areas within the Subdistrict which the Commission proposes to, serve initially constitute a relatively small portion of the Subdistrict and are widely scattered throughout the Subdistrict. Nevertheless, the General Assembly has determined that the entire Subdistrict will benefit from, and the public health throughout the Subdistrict requires, the installation of sewage collection facilities in populated areas as they develop. On this basis the General Assembly has concluded that ad valorem taxes should be imposed throughout the Subdistrict to finance the construction program which the Commission now purposes to, undertake." 1972 Statutes at Large, p. 3663.

It is estimated that debt service on the bond issue will require a districtwide eight mills ad valorem tax, a $400.00 tap fee and a $4.00 monthly service charge, the latter two to be paid by persons receiving sewer service.

The plaintiff is the owner of property within the subdistrict, situate about a mile from the nearest area to be sewered under the five-year program. In this class action, he seeks to enjoin the issuance of the $2,200,000.00 in bonds, contending (1) that the imposition of the districtwide ad valorem tax to finance sewer construction in the heavily populated areas throughout the subdistrict will constitute a taking of his property without due process of law and a denial of equal protection of the laws; and (2) that the $2,200,000.00 bond issue to finance sewer construction in an area thirteen miles away from his property is invalid on the same grounds. The circuit court overruled both contentions, and plaintiff has appealed.

It is settled law in this and other jurisdictions that the foundation of the power to lay a special assessment for a local improvement is the benefit which the improvement confers on the owners of property in the special assessment district, which benefit is different from the general benefit enjoyed by those outside the district. *E. g., Evans v. Beattie,* 137 S. C. 496, 518, 135 S. E. 538, 546 (1926); 14 McQuillan, Municipal Corporations, Sec. 38.02 (1970); 63 C. J. S. Municipal Corporations § 1290 (1950); 48 Am. Jur., Special or Local Assessments, Sec. 3 (1943). It is equally well settled in this jurisdiction that once the legislature has found that such benefits will accrue to the property within the district, its finding is reviewable only for the purpose of determining whether the legislative action was palpably arbitrary or " 'wholly unwarranted,' 'a flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property.' " *Branson v. Bush,* 251 U. S. 182, 40 S. Ct. 113, 115, 64 L. Ed. 215 (1919), quoted with approval in *Mills Mill v. Hawkins,* 232 S. C.

515, 529-530, 103 S. E. (2d) 14, 20 (1957). The rule in this jurisdiction is that benefits need not be direct or immediate. *Mills, supra.*

The scant record in this case falls short of meeting this burden. The relevant evidence consists largely of a map of the subdistrict with the areas which will be sewered first and the plaintiff's property marked specially, and the following stipulated facts:

"Included within the Subdistrict are ten densely populated areas which the State Board of Health has designated to be in immediate need of public sewers .... Outside of these designated areas, the Subdistrict is thinly populated at this time. However, the population is expected to continue to increase throughout the Subdistrict. There are very few public sewers within the Subdistrict although, in several instances, private developers or industries have installed sewage collection and/or treatment facilities. In some instances these treatment facilities are being maintained and operated by the Authority. For the most part, disposal of sewage is handled throughout the Subdistrict by individual septic tanks and tile fields. The soil in the Subdistrict is red clay and unsatisfactory for the operation of septic tanks. As a result the septic tank systems create health problems. In many cases sewage runs in open ditches and stands in yards. This problem has become serious within the ten densely populated areas. It does not create such an acute public health hazard in the thinly populated area of the Subdistrict outside of the ten densely populated areas."

A look at the map verifies that the ten densely populated areas are scattered throughout the Subdistrict.

As noted earlier, benefits from special assessments need not be direct or immediate. Indirect benefits which may accrue to properties within the subdistrict include enhanced property value resulting from decreased distance to sewer disposal lines, proximity to well developed centers and generally improved condition of sanitation and public health

throughout the area. *Mills, supra.* There has been no showing that the tax burden placed on these property owners "will so materially exceed the benefits received as to be palpably arbitrary." *Mills,* 232 S. C. at 531, 103 S. E. (2d) at 21. The evidence does not show the proportion of the total cost which property not presently in line for sewers will bear, nor does it establish that the territory encompassed by the subdistrict is too broad for the sewer program to confer benefits on plaintiff's property. Thus, on the record before us, we cannot say that the legislature has created a district which arbitrarily includes property which will be subjected to special assessment but will receive no comparable benefit from the proposed improvement.

The plaintiff next contends that his constitutional rights are impaired by the issuance of $2,200,000.00 in bonds to construct sewers in Piedmont Park which is remote from his property. This claim is unsound because it discounts the five-year program of bond sales and sewer construction. To require that the first stage of a large scale construction project in an assessment district be of benefit to all the property in the district would be impractical. It is sufficient that the overall program will benefit the entire subdistrict. The legislative finding that such will be the result is not seriously challenged by this record.

The plaintiff also argues that construction may stop after the initial area has been sewered, resulting in ad volorem taxes against his property with no corresponding benefit. The presumption is that the Commission will perform its duty by pressing to completion the construction program which, in the exercise of its judgment, it has projected over a five-year period. Mere speculation that it may not do so is insufficient to entitle plaintiff to relief on constitutional grounds.

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.