1682

HARLEYSVILLE MUTUAL INSURANCE CO., Respondent v. R.W. HARP AND SONS, INC., f/k/a Control Fuel Systems, Inc., The Pantry, Inc., P. J. Dormish and John Dormish, of whom The Pantry, Inc. is Appellant. Appeal of THE PANTRY, INC.

(409 S.E. (2d) 418)

Court of Appeals

*Walter B. Todd, Jr.,* Columbia, and *Urș R. Gsteiger,* Winston-Salem, *for appellant.*

*E. Glenn Elliott,* Florence, *for respondent.*

Heard April 16, 1991; Decided Aug. 5, 1991.

Rehearing Denied Oct. 4, 1991.

BELL, Judge:

This is an action for a declaratory judgment seeking construction of an insurance contract. Harleysville Mutual Insurance Company sought a declaration that a multiperil insurance policy it issued to Control Fuel Systems, Inc., does not

cover claims arising out of a gasoline leak at a Timmonsville, South Carolina, convenience store owned by Pantry, Inc. The facts were stipulated, leaving only a question of law for the circuit court. It was also stipulated that the law of North Carolina controls this case. Applying North Carolina law, the circuit judge held the insurance policy did not cover claims arising out of the gasoline leak. Pantry appeals. We affirm.

In August 1981, Controlled Fuel Systems, Inc., now known as R.W. Harp and Sons, Inc., installed underground gasoline storage tanks, pumps and lines at a newly constructed Pantry convenience store in Timmonsville, South Carolina. The system operated without complaint of leaks or contamination until June 6, 1983, when a telephone crew notified the South Carolina Department of Health and Environmental Control (DHEC) that they smelled gasoline in a manhole approximately fifty yards from the Pantry store.

On June 7, 1983, an investigating team found a leak in an underground pipe union connecting the underground pump and tank to the above ground dispensing pump. Once the leaking pipe union was uncovered, the investigators discovered that gasoline shot out of the pipe union in a steady stream whenever the gasoline pump was operating. The leaking union was repaired that day. As a result of the leak, approximately 4,321 gallons of leaded "regular" gasoline were discharged into the ground.

On October 25, 1983, DHEC issued an Administrative Consent Order, which required Pantry to monitor gasoline accumulations, document gasoline lost, determine the severity of any soil and groundwater contamination, implement necessary clean-up measures, and reimburse DHEC for its costs and expenses. Pantry's expenses as a result of the leak totaled $182,936.31. It sought to recover these expenses from Controlled Fuel Systems and Harp on the ground that the leaking pipe union had been defectively installed.

In addition to these stipulated facts, Harleysville introduced evidence that the gasoline was discharged over a period of up to sixty days and that it took a period of time to migrate to the manhole where it was discovered.

At all times material to this action, Controlled Fuel Systems had in effect a multiperil insurance policy with Harleysville Mutual. Harleysville asserts the policy did not

cover damages caused by the gasoline leak because of a "pollution exclusion" in the policy, which reads as follows:

This insurance does not apply:

. . . . .

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

There is no question that the gasoline leak in this case was an "occurrence" within the meaning of the policy. Moreover, the circuit judge noted that Pantry did not contest the validity or applicability of the pollution exclusion. Instead, Pantry argued that the discharge of gasoline was "sudden and accidental," bringing it within the exception to the pollution exclusion. No one claims the discharge of gasoline was not "accidental." The court found in favor of Harleysville, on the ground that the leak was not "sudden." The issue before us is whether the judge misconstrued the word "sudden," as a matter of North Carolina law.

The North Carolina Supreme Court in *Waste Management v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E. (2d) 374 (1986), interpreted an insurance policy with an identical pollution exclusion clause. The Court concluded that in the context of the policy the word "sudden" is unambiguous and must be construed in the temporal sense as requiring an "abrupt or precipitant event." *Id.* at 699, 340 S.E. (2d) at 382.[1]

Pantry does not argue that the 4,321 gallons of gasoline in this case were discharged into the ground suddenly, abruptly,

---

[1] *Waste Management* was a "duty to defend" case. As such, it came to the Supreme Court of North Carolina on the pleadings rather than on a final judgment. The precise holding of the case was that the occurrences alleged were outside the policy coverage "because the 'sudden' release or escape of contaminants was neither expressly nor impliedly alleged in the pleadings. . . ." *Waste Management,* 315 N.C. at 700, 340 S.E. (2d) at 383. The facts involved the dumping of contaminated materials at a landfill over a number of years. The contamination eventually leached through the soil into the ground-

or precipitantly. Pantry admitted in its brief that the "leak probably was caused by the faulty installation of the union" in August, 1981. No one knew how long the union had been leaking, but the parties surmised gasoline had been discharged between fourteen and thirty days before the leak was discovered. Moreover, the circuit judge found from the stipulated facts and evidence presented by Harleysville that the discharge of 4,321 gallons did not happen all of a sudden, but took place over a period of time. Pantry has not taken exception to this finding.

Pantry asserts that no reasonable distinction can be drawn between an accident that causes an immediate discharge of a large quantity of pollutants and a continuing leak that causes great amounts of pollution to accumulate over time. If both types of event are unforeseen and unexpected, Pantry argues, they are "sudden and accidental" within the meaning of the policy.

This same argument was rejected in the *Waste Management* decision. The Court stated that to construe the word "sudden" as synonymous with "accidental"—in the sense of "unexpected" or "unforeseen"—would render the coverage clause, the pollution exclusion, and the exception redundant and indistinguishable. *Id.* at 698, 340 S.E. (2d) at 381-82. The Court reasoned, therefore, that the "sudden and accidental" exception must be construed not only in terms of the event being unexpected, but also in terms of it happening instantaneously or precipitantly. *Id.*

Applying the *Waste Management* decision to this case, we hold that the circuit judge construed the pollution exclusion correctly as a matter of North Carolina law.

Affirmed.

CURETON and GOOLSBY, JJ., concur.

---

water making it unfit for human consumption. A major issue in the case was whether the dumping was an "occurence" within the meaning of the insurance policy, since the waste disposal company responsible for the dumping conceded that the dumping itself was an "intentional" act. The Court held that the complaint did allege an "occurence," because the disposal company apparently was not aware that the waste it was dumping was contaminated. Thus, the resulting groundwater pollution was an unexpected or unforeseen event.