485 S.E.2d 92

HAGLEY HOMEOWNERS ASSOCIATION, INC., James Neil Lewis, David R. Evans, Aram L. Ehramjian, Lynn R. Gilligan, Henry Culbertson, Bessie M. Baldwin, and William A. Buck, as representatives of the class herein described, Plaintiffs,

of whom Hagley Homeowners Association, Inc., and David R. Evans and Aram L. Ehramjian are Appellants,

v.

HAGLEY WATER, SEWER, AND FIRE AUTHORITY, a Special Purpose District, and Georgetown County Water and Sewer District, a Special Purpose District, Defendants–Respondents,

and

Gerald V. Abenshon, Douglas Bailey, Clarence E. Fraley, Murray W. Ferguson, Donald B. Graham, Hammond Gunnell, Jr., Thomas K. Johnston, Jr., Charles B. Keel, Charles B. Keel, II, Irene Milne, Edward H. Smith, Ralph J. Stipley, and Margaret A. Tarbox, individually and as representatives of the class herein described, Intervening Defendants–Respondents.

No. 24599.

Supreme Court of South Carolina.

Heard Jan. 22, 1997.

Decided April 14, 1997.

Rehearing Denied May 12, 1997.

John C. Benso of Hardig & Parsons, Pawleys Island, for Appellants.

James J. Hinchey, Jr. and William C. Cleveland, III, of Haynsworth, Marion, McKay & Guerard, L.L.P., Charleston, for Defendants–Respondents Georgetown County Water & Sewer District.

Jack M. Scoville, Jr., Georgetown, for Intervening Defendants–Respondents.

BURNETT, Justice:

This is an appeal from orders of the circuit court 1) upholding the constitutionality of Act No. 733, 1967 Acts 1539, which created Defendant–Respondent Georgetown County Water and Sewer District (the District) and 2) upholding monthly charges and front-foot assessments imposed by the District. We affirm.

## FACTS

Hagley Estates subdivision was created by a private developer in the mid–1960s. After the developer filed bankruptcy, the lots were publicly auctioned.

The District, a special purpose district, was created by the General Assembly in 1967 for the purpose of acquiring, constructing, and operating a water and sewer system. The District's service area encompasses Georgetown County (excluding the City of Georgetown and the Town of Andrews), including Hagley Estates. Act No. 733, 1967 Acts 1539.

The predecessor to the South Carolina Department of Health and Environmental Control (DHEC) determined most of the approximately 1000 lots in Hagley Estates did not have sufficient size or suitable soil conditions to support private septic tanks and wells; consequently, most of the lots were not conducive for building. At the request of DHEC, the General Assembly created Defendant–Respondent Hagley Water, Sewer, and Fire Authority (the Authority)[1] for the purpose of controlling septic tank permit issuance and planning for future water, sewer, and fire protection needs of Hagley Estates. Act No. 285, 1971 Acts 344.

Due to lack of development, it was not economically feasible to construct a public water and sewer system for Hagley Estates. To permit some development, the Authority and DHEC entered into an agreement which provided the Authority could issue septic tank permits to every third lot upon the specific condition the applicant would subscribe to the public water and/or sewer system when it became available, even if the applicant had a well and/or septic tank. The agreement further stated, once an area of the subdivision reached the

---

1. The Authority has not participated in this appeal.

saturation point as determined by engineers and DHEC, no more permits would be issued until a community water and sewer system was provided. In accordance with these terms, approximately 322 of the 950 Hagley Estate lots received septic tank permits between 1971 and 1988.

In 1988, the Hagley Estates Property Owners Association petitioned the District to provide water and sewer service. According to the petition, 80% of the property owners supported construction of the system. The District obtained a preliminary engineering report and made a preliminary application for financing. At a public hearing in February 1991, the District became aware of some homeowners' opposition to the project.

The District sent a survey to every property owner of record in March of 1991. Survey results indicated there was no clear mandate either for or against the project. In April 1991, the District voted to defer construction of a community water and sewer system.

In July 1991, the Authority requested the District proceed with construction of the community water and sewer system for Hagley Estates. The District voted to proceed with the project on July 24, 1991.

On June 1, 1992, the Authority and the District entered into a formal agreement to implement the water and sewer project. This agreement was reached after eleven months of planning and study at a cost of $250,000. The estimated completion date of the project was November 1994. Construction costs for the system would be recovered by front-foot assessment of lot owners once the system is available.

Appellants, most of whom have homes with individual wells and septic tanks in the Hagley Estates subdivision, brought this action challenging the constitutionality of Act No. 733, 1967 Acts 1539, which created the District. They contend the Act is special legislation in contravention of art. III, § 34(IX) of the S.C. Constitution. In addition, they argue the monthly charges and front-foot assessments imposed by the District violate S.C. Constitution art. X, § 5, and charges to recover construction costs should be based on a lot owner's proportionate share of benefits realized from the community water and sewer system, rather than front-foot assessments. Interven-

ing Defendants–Respondents support the construction of a community water and sewer system for the subdivision.

## ISSUES

I. Did the trial court err by determining Act No. 733, 1967 Acts 1539, does not violate the constitutional prohibition against special legislation?

II. Did the trial court err by determining imposition of front-foot assessments and monthly charges by the District do not constitute taxation without representation in violation of S.C. Constitution art. X, § 5?

III. Did the trial court err by determining the District may impose charges by way of front-foot assessment rather than by the method proposed by Appellants?

## DISCUSSION

### I.

■ Appellants contend the trial judge erred by determining creation of the District by Act No. 733, 1967 Acts 1539 (the Act), did not constitute special legislation in contravention of S.C. Constitution art. III, § 34(IX). They further argue no compelling reasons justified creation of the District by special law. We disagree.

■ In relevant part, S.C. Constitution art. III, § 34(IX) provides: "where a general law can be made applicable, no special law shall be enacted ...". South Carolina Code Ann. §§ 6–11–10 to –1260 (1977) provide the method by which special purpose districts may be established by petition of the affected landowners. Former versions of §§ 6–11–10 to –1260 existed at the time the General Assembly promulgated the Act creating the District. Sections 6–11–10 to –1260 and its predecessors constitute general law. *Town of Hilton Head v. Morris*, 324 S.C. 30, 34, 484 S.E.2d 104, 107 (1997) (a general law is one which applies to the entire State and operates wherever the specified conduct takes place).

■ For decades this Court has recognized the right of the General Assembly to create special purpose districts without regard to the prohibition of S.C. Constitution art. III, § 34(IX). *Distin v. Bolding*, 240 S.C. 545, 126 S.E.2d 649, 653

(1962), *citing Mills Mill v. Hawkins,* 232 S.C. 515, 103 S.E.2d 14 (1957). Even special purpose districts which were primarily concerned with "mere conveniences or other matters not so vital to the public welfare" or for which "there was no real necessity for a special act" have been upheld by numerous decisions of the Court.[2] *Mills Mill,* 232 S.C. at 524, 527, 103 S.E.2d at 17, 19, citing cases therein.

■ We conclude, although it is special legislation, the Act did not contravene the constitutional prohibition against special legislation. *Distin, supra; Mills Mill, supra.* Furthermore, we view the functions and powers of the District stated in the Act as sufficient evidence of need for the District's creation. *Rutledge v. Greater Greenville Sewer Dist.,* 139 S.C. 188, 193, 137 S.E. 597, 598 (1927) ("Every presumption must be indulged in favor of the constitutionality of a legislative act. Courts should not declare a statute unconstitutional unless the invalidity is "manifest beyond a reasonable doubt").

## II.

■ Appellants argue the trial court erred by determining the imposition of monthly charges and front-foot assessments to cover the construction costs of the project by the District do not constitute taxation without representation in violation of S.C. Constitution art. X, § 5. We disagree.

The District is composed of five members who are appointed by the governor upon the recommendation of the Legislative Delegation of Georgetown County. The District has the power to prescribe rates for water service and to exercise all powers given to special purpose districts by general law. Act No. 733, 1967 Acts 1539, §§ 2 and 4(11) & (23). South Carolina Code Ann. § 6–11–1210(a) and authorizes special purpose districts to collect charges for sewage collection and to impose front-foot assessments against properties abutting the sewage collection lines.

S.C. Constitution art. X, § 5 provides as follows:

---

2. We note the existence of special purpose districts is protected, even under home rule, until they are dissolved by the General Assembly. *Michelin Tire Corp. v. Spartanburg County Treasurer,* 281 S.C. 31, 314 S.E.2d 8 (1984).

No tax, subsidy or charge shall be established, fixed, laid or levied, under any pretext whatsoever, without the consent of the people or their representatives lawfully assembled. Any tax which shall be levied shall distinctly state the public purpose to which the proceeds of the tax shall be applied.

This provision is known as the prohibition against taxation without representation. *Crow v. McAlpine*, 277 S.C. 240, 285 S.E.2d 355 (1981).

■ Pursuant to S.C. Constitution art. X, § 5, the power of taxation rests with the people of South Carolina who have entrusted this power to the General Assembly. While the General Assembly can delegate its taxing authority to a subordinate agency, it can only delegate this power to a body which is either composed of persons assented to by the people or subject to the supervisory control of a body chosen by the people. *Bradley v. Cherokee School Dist. No. One*, 322 S.C. 181, 470 S.E.2d 570 (1996). A board composed of persons appointed by the governor upon the recommendation of the county legislative delegation cannot levy taxes without violation of the constitutional provision against taxation without representation. *Crow, supra.* It is undisputed the District is appointive, not representative.

■ Generally, taxes are imposed on all property for the maintenance of government while assessments are placed only on the property to be benefited. *Robinson v. Richland County Council*, 293 S.C. 27, 358 S.E.2d 392 (1987). A "charge" is "[t]he price of, or rate for, something." Black's Law Dictionary 233 (6th ed. 1990). Unlike taxes, charges and assessments are similar in that a person receives something specific in exchange for payment of a charge and/or assessment.

■ "The imposition of an assessment for the expenses of the local improvement upon adjoining lands benefited by it, although an exercise of the taxing power is not taxation within the provisions of the State Constitution regulating or prescribing the manner of taxation." *Distin*, 240 S.C. at 554, 126 S.E.2d at 653.[3] Similarly, we hold the imposition of a charge

---

3. *See* 70A Am.Jur.2d *Special or Local Assessments* § 1. "[A] special or local assessment is not a tax in the sense of a tax to raise revenue for

in exchange for a service does not constitute taxation for constitutional purposes. Accordingly, legislative delegation of authority to impose charges and assessments to an appointed body does not run afoul of the prohibition against taxation without representation. *See Soliah v. Cormack*, 17 N.D. 393, 117 N.W. 125 (1908) (legislature had authority to delegate to appointed board of drain commissioners the functions of constructing drains and levying assessments to pay for them).[4] Therefore, the imposition of charges and assessments by the District, an appointed body, does not violate S.C. Constitution art. X, § 5.

## III.

■ Appellants argue the trial court erred by directing a verdict on their cause of action for "disproportionality." They contend charges (presumably those charges to offset the construction costs) should be based upon the lot owners' proportionate share of benefits realized by the installation of the community water and sewer system, rather than front-foot assessments. Consequently, appellants assert charges should be based upon the increase in fair market value of the unbuildable lots and the decrease in the fair market value of their lots as a result of the community water and sewer system. We disagree.

The legislature has authorized special purpose districts to impose front-foot assessments against property abutting sewer lines. S.C.Code Ann. § 6–11–1210(e). Furthermore, this Court has previously upheld front-foot assessments against properties abutting on water and sewer lines. *Hedeman v. Postell*, 250 S.C. 515, 159 S.E.2d 230 (1968); *Newton v. Hanlon*, 248 S.C. 251, 149 S.E.2d 606 (1966). In *Newton*, the Court held:

Assessments for local improvements must be fairly and justly apportioned among those charged with their payment.

general governmental purposes, and it is not, in the constitutional sense, a tax at all."

4. *See also* 70A Am.Jur.2d *Special or Local Assessments* § 8. "Constitutional limitations upon the power of the legislature to levy taxes do not restrict its power to authorize municipalities to impose special assessments for local improvements . . .".

A method of apportionment, whether by statute or by regulation, that is manifestly arbitrary or discriminatory does not fulfill the constitutional requirements of due process and equal protection. But there never has been and probably never can be a perfectly equitable distribution of the tax burden; and statutes or regulations for the apportionment of assessments for local improvements are not to be stricken down merely because they fail to attain the unattainable. All that is required of them by constitutional law is that they apportion the burden of assessments with approximate equality, upon a reasonable basis of classification, and with due regard to the benefits to the individual property owners and the requirements of the public health, safety or welfare.

*Id.*, 248 S.C. at 263, 149 S.E.2d at 613.

The record indicates when appellants applied for septic tank permits, they agreed to tie into the community water and sewer system once it became available. In exchange, appellants received permits to construct septic systems while the remaining lot owners were prohibited from obtaining septic permits and developing their property. Under these circumstances, it is appropriate for appellants to pay their portion of the cost for the construction of the community water and sewer system.

Although appellants may not presently receive as great a benefit from the community water and sewer system as property owners who do not have private water and sanitation facilities, there has never been any requirement that benefits to assessed land be direct or immediate or that there be absolute equality of benefits. *Mills Mill, supra.* Accordingly, we conclude apportionment of the construction costs for the community water and sewer system by front-foot assessment is fair and reasonable.

**AFFIRMED.**

FINNEY, C.J., and TOAL, MOORE and WALLER, JJ., concur.