519 S.E.2d 561

**J.K. CONSTRUCTION, INC., as property owner in Western Carolina Regional Sewer Authority, and on behalf of all others similarly situated, Appellant,**

v.

**WESTERN CAROLINA REGIONAL SEWER AUTHORITY, South Carolina, Respondent.**

No. 24981.

Supreme Court of South Carolina.

Heard June 10, 1999.

Decided Aug. 2, 1999.

164

James Andrew Smith of Love, Thornton, Arnold & Thomason, P.A., Greenville, for appellant.

Steve A. Matthews of Sinkler & Boyd, P.A., Columbia, and Leo H. Hill of Hill, Wyatt & Bannister, Greenville, for respondent.

WALLER, Justice:

J.K. Construction, Inc., (JKC) paid under protest a "new account fee" imposed by Western Carolina Regional Sewer Authority (Authority), then brought a declaratory judgment action challenging the validity of the fee. JKC asked the court to enjoin Authority from imposing the fee and order Authority to reimburse everyone who had paid the fee. The circuit court referred the case to a master-in-equity, granting the master authority to enter a final judgment with appeal directly to this Court. The master granted Authority's motion for summary judgment, ruling the fee was valid under statutory law and the state constitution. JKC appeals.

## FACTS

The parties stipulated to all pertinent facts. Authority is a special purpose district created by the Legislature in 1925. The district includes most of Greenville County and portions of three surrounding counties. Authority owns and operates trunk sewer lines, sewage pumping stations, and sewage treatment facilities. It disposes of sewage initially collected by other entities. JKC receives service from the Metropolitan Sewer District, a special purpose district that is a sub-district of Authority.

In 1995, on the recommendation of a consultant and after a public hearing, Authority's Board of Commissioners voted to begin requiring each person or entity to pay a new account fee when connecting to the sewer system or upgrading to a larger water line. The fee ranges from $500 for a residential user to $80,000 for a large industrial user. Authority began imposing the fee November 1, 1995.

Before 1975, Authority relied on ad valorem property taxes to fund operating, maintenance, capital, and debt service expenses. Authority began that year, as a condition of continued eligibility for federal grants, to rely solely on sewer use charges to pay all expenses and debt. Since the 1970s, Authority has used revenue from its customers to pay about $120 million in debt service on general obligation and revenue bonds. In addition, customers' revenue has provided more than $28 million for capital projects not financed with bonded indebtedness.

Since 1995, Authority's customers, through payment of sewer use charges, have built up retained earnings from a deficit to a balance of $26.5 million and funded a contingent account of $2.3 million, according to Authority's 1997 fiscal report. Those amounts, however, are not sufficient to pay for all future capital improvements to the system. Proceeds from the new account fee will be spent only on unspecified capital improvement projects in the future. The new fee generated nearly $310,000 in revenue in fiscal 1996 and $1.27 million in fiscal 1997.

## STANDARD OF REVIEW

■ This appeal raises three questions of law. When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts. *Craig Constr. Co. v. Hendrix*, 568 So.2d 752, 756 (Ala.1990); *Miller v. Board of Trustees*, 132 Idaho 244, 970 P.2d 512, 514 (1998); *cert. denied*, — U.S. ——, 119 S.Ct. 2050, 144 L.Ed.2d 216 (1999); *cf. Harleysville Mut. Ins. Co. v. R.W. Harp and Sons, Inc.*, 305 S.C. 492, 409 S.E.2d 418 (Ct.App.1991) (stipulated facts leave only a question of law for trial court); *Independent Grain Dealers Marketing Ass'n, Inc. v. Beard*, 284 S.C. 309, 326 S.E.2d 169 (Ct.App.1985) (same). In such cases, the appellate court owes no particular deference to the trial court's legal conclusions. *See* S.C. Const. art. V, §§ 5 and 9; S.C.Code Ann. §§ 14–3–320, 14–3–330, and 14–8–200 (1976 & Supp.1998) (granting Supreme Court and Court of Appeals the jurisdiction to correct errors of law in both law and equity actions); *accord Foss Alaska Line, Inc. v. Northland Services, Inc.*, 724 P.2d 523, 526 (Alaska 1986) (appellate court may review application

of legal doctrine to undisputed facts without usual deference to lower court); *Gwinnett County v. Davis*, 268 Ga. 653, 492 S.E.2d 523, 525 (1997) (same); cases collected in West's Digests, *Appeal and Error*, Key No. 841.

## ISSUES

1. Did the trial court err in ruling that the new account fee was a charge, rather than a tax that must be uniformly applied to all customers in the special purpose district?

2. Did the trial court err in ruling that Authority may impose the new account fee on individuals connecting to the sewer system after a given date?

3. Did the trial court err in ruling that imposition of the new account fee does not violate the Equal Protection Clause?

### 1. IS THE FEE A CHARGE OR A TAX?

■ JKC contends the trial court erred in ruling the new account fee is a sewer service charge. The fee provides a general benefit to everyone who lives in Authority's district because proceeds will be used to expand treatment capacity. Consequently, the court erred in refusing to hold that the fee is actually a tax which Authority must apply uniformly to all residents of the district, not just to new customers, JKC argues.

We disagree. We hold that the required payment is a charge, not a tax, and Authority has uniformly imposed the charge upon those who are required to pay it.

First, the required payment primarily benefits those who must pay it because they receive a special benefit or service as a result of improvements made with the proceeds. That special benefit is the proper treatment and disposal of sewage. *Brown v. County of Horry*, 308 S.C. 180, 184–85, 417 S.E.2d 565, 568 (1992) (holding that road maintenance fee imposed on all motor vehicles registered in county was a service charge, not a tax). It is true that the entire area may benefit from improved and expanded sewage service, but a charge does not become a tax merely because the general public obtains some benefit. *Brown v. County of Horry, supra; Robinson v.*

*Richland County Council,* 293 S.C. 27, 33, 358 S.E.2d 392, 396 (1987) (holding that required payment imposed to fund installation and maintenance of sewer facility was assessment, and not tax, regardless of whether general public obtained health benefit from elimination of sewage problem).

Second, proceeds from the required payments are dedicated solely to capital improvement projects. The proceeds are not placed in a general fund to be spent on Authority's ongoing expenses and maintenance, which is a hallmark of a tax. *Hagley Homeowners Ass'n v. Hagley Water, Sewer, and Fire Auth.,* 326 S.C. 67, 75, 485 S.E.2d 92, 96 (1997) ("[g]enerally, taxes are imposed on all property for the maintenance of government"); *Brown v. County of Horry, supra* (revenue from fees destined for general fund indicates a tax).

Third, as the parties stipulated, the revenue generated by the required payment will not exceed the cost of capital improvements to the system. *C.R. Campbell Constr. Co. v. City of Charleston,* 325 S.C. 235, 481 S.E.2d 437 (1997) (applying factors from *Brown v. County of Horry, supra,* to uphold validity of municipal real estate transfer fee dedicated to parks and recreation).

Fourth, Authority uniformly has imposed the required payment upon those who must pay it. The trial court ruled the required payment, because it was a charge imposed by a special purpose district, was not mandated by statute or the constitution to be uniform in the sense that every customer had to pay it. The court noted, however, that Authority uniformly had imposed the required payment on all new customers based on their anticipated water usage.

We agree with the trial court's reasoning. While no statute or constitutional provision explicitly requires charges by special purpose districts to be uniform, the Court has stated that charges or assessments imposed only upon certain individuals "must be fairly and justly apportioned among those charged with their payment. A method of apportionment, whether by statute or by regulation, that is manifestly arbitrary or discriminatory does not fulfill the constitutional requirements of due process and equal protection." *Hagley Homeowners Ass'n,* 326 S.C. at 76–77, 485 S.E.2d at 97 (quoting *Newton v. Hanlon,* 248 S.C. 251, 149 S.E.2d 606 (1966)).

Fifth, we may consider the fact that Authority intended to classify the payment as a charge. *Brown v. County of Horry*, 308 S.C. at 184, 417 S.E.2d at 568 (while governmental entity's intent may be considered, the question of whether a required payment is a charge or a tax depends on its real nature and not the label assigned to it by the governmental entity that approved it). Authority described it as a "new account fee" in the resolution adopting it, and has not used tax levies since 1975 in order to maintain continued eligibility for federal grants.

JKC's reliance upon *Casey v. Richland County Council*, 282 S.C. 387, 320 S.E.2d 443 (1984), is misplaced. In that case, the county imposed a required payment upon all residents who lived in unincorporated areas of the county to build a sewer system. The Court stated that each resident required to pay the assessment must receive a specific benefit or service in order for the payment to qualify as a valid assessment. Each resident did not because many residents of unincorporated areas already were served by municipal systems; therefore, the payment was not an assessment. Instead, the Court determined the required payment was a tax because it would provide only a general benefit to those residents already served by municipal systems. But as a tax, it was unconstitutional because it was not uniformly applied to everyone who lived in the county—residents of municipalities and unincorporated areas alike. *Id.;* S.C. Const. art. X, §§ 1 and 6. Consequently, the Court struck down the required payment.

We find *Casey* distinguishable from the present case. The new account fee properly is classified as a charge, not a tax, as explained above. Furthermore, every person or entity required to pay the new account fee will receive a special benefit or service as a result of improvements made with the proceeds. Unlike *Casey*, Authority has not required anyone who will not benefit from the service to pay the fee. *Accord Wright v. Proffitt*, 261 S.C. 68, 72, 198 S.E.2d 275, 277 (1973) (assessment for a local improvement is valid when it confers a benefit on property owners in the district where it is assessed, and that benefit is distinct from general benefit enjoyed by those outside the district); *Newton v. Hanlon*, 248 S.C. at 262–63, 149 S.E.2d at 612 (special purpose district may use ad valorem property tax, frontage-foot assessments, monthly use

charges, or combination thereof, to build and maintain a sewer system); *Distin v. Bolding,* 240 S.C. 545, 126 S.E.2d 649 (1962) (upholding validity of legislative act that allowed a special purpose district to impose assessments on real property to pay for construction of sewage disposal facilities).

## 2. IMPOSITION OF FEE AFTER A GIVEN DATE

■ JKC contends that even if the new account fee is classified as a charge, the trial court erred in ruling that Authority may impose it on individuals connecting to the sewer system after the "magical date" of November 1, 1995. The fee violates Article X, Section 12 of the state constitution and a statute requires any charges to be imposed upon all those to whom service is rendered, not just new customers, JKC argues.

Article X, Section 12 states:

No law shall be enacted permitting the incurring of bonded indebtedness *by any county* for sewage disposal or treatment, fire protection, street lighting, garbage collection and disposal, water service or any other service or facility benefitting only a particular geographical section of the county unless a special assessment, tax or service charge in an amount designed to provide debt service on bonded indebtedness or revenue bonds incurred for such purposes shall be imposed upon the area or persons receiving the benefit therefrom (emphasis added).

■ When construing the constitution, the Court applies rules similar to those relating to the construction of statutes. *McKenzie v. McLeod,* 251 S.C. 226, 161 S.E.2d 659 (1968). In construing a statutory or constitutional provision, the Court must give clear and unambiguous terms their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the provision's operation. *See Gilstrap v. South Carolina Budget and Control Bd.,* 310 S.C. 210, 423 S.E.2d 101 (1992). "This Court is bound to presume that the framers of the constitution had some purpose in inserting every clause and every word contained in the document. It is never to be supposed that a single word was inserted in the law of this state without the intention of thereby conveying

some meaning." *Davenport v. City of Rock Hill,* 315 S.C. 114, 117, 432 S.E.2d 451, 453 (1993).

JKC urges the Court to read Article X, Section 12 to include special purpose districts. We agree with Authority that the provision is inapplicable because it explicitly applies only to *counties,* not to special purpose districts or other political subdivisions.

■ JKC next asserts that S.C.Code Ann. § 6–15–60 (Supp. 1998) requires Authority to impose the new account fee on everyone in the district, not just on new customers who join the system after November 1, 1995. JKC relies upon the following emphasized language of Section 6–15–60:

> The General Assembly confirms the right of any govern- mental entity [1] to impose *upon all those to whom sewer service is rendered,* (a) a sewer service charge therefor, which may, in the discretion of its governing body, be sufficient to provide for all or any part of the cost of operating and maintaining the sewer facilities and to pro- vide debt service on bonds or other obligations of the governmental entity issued to provide any type of sewer collection, disposal, or treatment service, and (b) a sewer connection charge, or connection fee or tapping fee designed to adequately reimburse the governing body for effecting the connection to provide sewer service.

We find JKC's argument unconvincing. As discussed above, the new account fee is a uniform charge that applies to every individual in the district who connects to the system or upgrades to a larger water line. Anything new—whether it is a fee, a tax, or any of a thousand other things imposed by government—must take effect on some date. The fact some individuals may have avoided the new account fee due to astute planning or serendipity is no reason to invalidate an otherwise legitimate fee. *Cf. State v. Rush,* 305 S.C. 113, 406 S.E.2d 355 (1991) (explaining the logical conclusion of arguing that a change in a criminal statute creates two classes of offenders in violation of equal protection would be that, once Legislature had enacted a statute, it could never amend or

---

1. The definition of "governmental entity" includes special purpose districts. S.C.Code Ann. § 6–15–10(3) (Supp.1998).

repeal it without running afoul of the equal protection clauses).[2]

### 3. EQUAL PROTECTION CLAUSE

■ JKC contends the trial court erred in ruling that imposition of the new account fee does not violate the Equal Protection Clause. S.C. Const. art. I, § 3 ("nor shall any person be denied the equal protection of the laws"). We disagree.

■ To satisfy the Equal Protection Clause, a classification must (1) bear a reasonable relation to the legislative purpose sought to be achieved, (2) members of the class must be treated alike under similar circumstances, and (3) the classification must rest on some rational basis. *D.W. Flowe &*

---

2. JKC describes the fee as a "capital improvement sewer service charge." Another perhaps more controversial term that describes it, which the parties have not used extensively, is "impact fee," or more accurately, "capital improvement impact fee." Authority's counsel conceded at oral argument that the new account fee is an impact fee.

   Local governing bodies have turned to impact fees in recent years as funds from the federal government dried up, mandates from state and federal governments increased, and local residents fought property tax hikes. Arthur C. Nelson, *Development Impact Fees: The Next Generation*, 26 Urb. Law. 541, 561 (1994) (defining capital improvement impact fees as those associated with the acquisition or construction of a facility rather than the dedication of land; article discusses why governments impose impact fees and the future of such fees). The purpose of an impact fee is "to fairly distribute the capital improvement costs of growth and development among those who are generating the need for the improvements." Roger K. Dahlstrom, *Development Impact Fees: A Review of Contemporary Techniques for Calculation, Data Collection, and Documentation*, 15 N. Ill. U.L.Rev. 557 (1995); *see also* Noreen A. Murphy, *The Viability of Impact Fees after Nolan and Dolan*, 31 N. Eng. L.Rev. 203, 213 (1996) (defining a type of impact fee as a "one-time charge[ ] imposed on a developer as a condition to receiving a building permit").

   The trial court observed in its order that JKC "has not seriously debated the defendant's authority to impose the fee." We conclude JKC has not challenged Authority's basic power to impose an impact fee. Consequently, we express no opinion on that issue. *See Hospitality Ass'n of South Carolina, Inc. v. County of Charleston*, 320 S.C. 219, 224, 464 S.E.2d 113, 116–17 (1995) (to decide whether governmental entity has a particular power, court must determine whether entity has the power to enact a given ordinance and, if so, whether ordinance is inconsistent with constitution or general law of state); *accord Williams v. Town of Hilton Head Island*, 311 S.C. 417, 429 S.E.2d 802 (1993).

*Sons, Inc. v. Christopher Constr. Co.,* 326 S.C. 17, 23, 482 S.E.2d 558, 562 (1997) (citing *Jenkins v. Meares,* 302 S.C. 142, 394 S.E.2d 317 (1990)). A legislative enactment will be sustained against constitutional attack if there is "any reasonable hypothesis" to support it. *Id.* (citing *Thomas v. Spartanburg Ry., Gas & Elec. Co.,* 100 S.C. 478, 85 S.E. 50 (1915)).

JKC first asserts the new account fee is not reasonably related to the legislative purpose of expanding Authority's facilities because any expansion will benefit everyone. Second, JKC defines the class as all residents of the district, which means those who join after November 1, 1995, are treated differently. Third, JKC contends there is no rational basis to charge only new customers for expansions that will benefit everyone.

We hold that the new account fee does not violate the Equal Protection Clause. First, the classification (requiring new customers to pay a new account fee) is reasonably related to the legislative purpose to be achieved (pay for future capital improvement projects). Authority wishes to ensure it has adequate funds for such projects, and the fees are set aside in a special account for that purpose.

Second, members of the class (new customers) are treated alike in that all must pay a fee based on their anticipated water usage under a schedule approved by Authority's board. We do not agree with JKC that the class is comprised of all residents of the district.

Third, the classification rests on a rational basis. It is rational for Authority to prepare to pay for future capital improvement projects. Imposing a new account fee, while perhaps not the only way to raise such funds, is a reasonable and legitimate method of accruing the funds. Existing customers collectively have paid tens of millions of dollars to build the current system, and it seems eminently fair and reasonable to require new customers to shoulder a portion of the cost of future expansions their presence will demand. *Accord Robinson v. Richland County Council,* 293 S.C. at 31, 358 S.E.2d at 395 (rejecting equal protection challenge to ordinance that allowed county to impose charges on residents served by new sewer lines, but not neighbors whose lines had been built with federal grant money); *Newton v. Hanlon,* 248

S.C. at 261, 149 S.E.2d at 611 (frontage-foot assessment limited to cost of construction of sewer lines with assessment to be made upon lots abutting directly on lines did not violate constitutional requirements of due process and equal protection).

## CONCLUSION

We affirm the trial court's judgment by holding that (1) the new account fee is a charge, not a tax, (2) Authority may begin imposing the fee on new customers after a given date, and (3) the fee does not violate the Equal Protection Clause.

AFFIRMED.

FINNEY, C.J., TOAL, MOORE, and BURNETT, JJ., concur.